No. 12,505.

BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES
*v.* NOLAN.
(14 P. [2d] 179)

Decided June 6, 1932. Rehearing denied September 12, 1932.

Mr. J. J. FARNAN, Mr. WALTER H. SHURTLEFF, Mr. HARRY J. ALDERS, Mr. HAMLET J. BARRY, for plaintiff in error.

Mr. FRANK H. HALL, for defendant in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff, Teresa Nolan, a minor, is the beneficiary, so designated as such, in a benefit certificate issued to Thomas Kearins by the defendant Brotherhood of Maintenance of Way Employees, an unincorporated association composed of local unions throughout the United States and Canada, organized to improve the condition of its members generally, and particularly providing for certain benefits on the death of a member. Kearins died in December, 1925. He was then, and for a period of more than twenty-five years had been, a member of the defendant organization. The material and controlling facts in this case are not in dispute. The defendant offered no testimony at the trial. The only defense pleaded and relied upon by the defendant is that Kearins was not a member in good standing and entitled to death benefits at the time of his death because he was delinquent in the payment of his quarterly dues and had not paid the same on the day designated by the constitution and by-laws of the defendant organization. The plaintiff in her replication admits that payments of dues were not made on the days designated by the constitution and by-laws of the defendant. She pleads a waiver by the defendant, through general custom, of those provisions of its by-laws requiring payments of dues at the times

designated and according to the terms thereof. The evidence in behalf of the plaintiff, without any contradiction, shows that not only Kearins was often late in the payment of his dues, but that a majority of the members of the local lodge did not pay dues on the dates provided by the constitution and by-laws of the defendant Brotherhood, and that Kearins and these other members were never dropped or treated in any manner different from the treatment accorded to members, if any, who paid up strictly in accordance with the provisions of the defendant's constitution and by-laws; that such deferred payments were always accepted by the defendant's secretary without objection or protest either by him or the parent lodge which had knowledge of the same. To the contrary, the secretary applied the payments on the arrears of the members when payments were made so as to make their membership continuous. Kearins, as stated, died December 13, 1925. The time for the next preceding payment of his dues was November 1, 1925, but he did not make this payment until November 22 of that year, but at the time of his death all of the payments that he was obliged to pay had been made, although the latter payment was not paid on the due date.

Trial was to the court without a jury and the court found all of the facts in favor of the plaintiff and gave judgment in her favor for approximately the sum of $500 which was the amount due and payable if the plaintiff was entitled to a recovery at all. We think the decision of the trial court was right and is sustained by the great weight of authority in this country and by three previous decisions of this court. *Woodmen v. Bohanna,* 59 Colo. 545, 151 Pac. 428; *LaGrow v. Woodmen,* 75 Colo. 466, 226 Pac. 1086; and *Fraternal Union v. Murray,* 81 Colo. 236, 254 Pac. 997. In the Bohanna case is the following statement by Judge Bailey, the author of the opinion: ''By the uncontradicted evidence a course of dealing with Bohanna is established, whereby for years he was permitted to pay his monthly assessments long

after they were due, with full knowledge on the part of the Head Camp, for Bergen's knowledge was its knowledge, a proposition fully supported by this court. *Supreme Lodge, Knights of Honor v. Davis,* 26 Colo. 252, 58 Pac. 595. Was that custom and practice abrogated in October, 1904, as Bergen testified it was? As has already been seen on this point the evidence is in conflict. The jury found that issue against the society, and by such finding this court is bound.''

The opinion further proceeds to state that it is an established doctrine by the courts of this country generally, including the United States Supreme Court, that, where by a course of dealing, a company like this had led a member to believe and understand that prompt payment of assessments will not be required, but they will be received and accepted after due, and the member will be considered in good standing notwithstanding a delay in payment, the company will be held to have waived prompt payment, and the member will be deemed to be in good standing for such reasonable time after an assessment is delinquent as has theretofore customarily been allowed him in which to pay dues. In the LaGrow case, supra, it was held in an opinion by Mr. Justice Teller, that where it is established that an insurance society accepted payment of premiums after the insured was in default, and that it was aware of such default, a waiver is established.

The trial court held that prompt payment of dues had been waived, since both the local agent and the parent organization were aware of such delinquencies, and received and accepted the payments for a series of years made after the due dates. When Kearins paid his dues on November 22, 1925, they were received without question by the local agent and transmitted to the parent brotherhood and received and retained by it without any question until this action was brought. The brotherhood, notwithstanding that Kearins, as well as other members, were customarily late in the payment of dues, received

for a long period of time such dues after the due date and retained the same and in the meantime took no steps whatever to suspend these delinquent members, but applied the delinqunt payments when they were later made, and this had the effect to keep their membership continuous and alive and estops the brotherhood to deny the member is not in good standing because of neglect to make payment of dues on the due date.

The judgment is right and it is accordingly affirmed.

MR. JUSTICE BUTLER and MR. JUSTICE BURKE dissent.

MR. JUSTICE BUTLER dissenting:

If the brotherhood plan were such as the majority opinion assumes it to be, the conclusion arrived at in that opinion would follow as a matter of course. It is clear that an insurer who, having the right to reject the payment as tendered too late, nevertheless accepts payment of an insurance premium, as such, after the time within which payment is required to be made, especially where the insurer has customarily accepted delinquent payments, waives the forfeiture that otherwise might have been enforced. Whether the charge for such protection is called an insurance premium, an insurance assessment, or insurance dues is unimportant. This case, however, does not come within that rule. Under the brotherhood plan the brotherhood did not have the right to reject the payments made by Thomas Kearins and other members after the due date; it accepted the payments, as under its rules it was required to do, as membership dues, not as payment for insurance.

The brotherhood is not an insurance order, but exclusively a labor union. Its objects are to raise wages; to reduce the hours of labor; to elevate the general condition of its members; to alleviate distress and suffering of its members caused by sickness or disability; to assist the widows and orphans of deceased members; to promote skill, efficiency, intelligence and character; to

secure, by all honorable means, the passage of laws to improve working conditions generally, and other laws beneficial to the members of the brotherhood. For the promotion of the service conditions and for the protection of its members, the brotherhood makes agreements with railroad officials with respect to the wages and terms of employment of its members; attempts to adjust controversies between its members and their employers; and, in case of strike or lockout, furnishes pecuniary relief to such of its members as are affected thereby. In return for such benefits, members are required to pay, as membership dues, $4 per quarter, payable on or before the first day of January, April, July and October of each year. If a member pays within the first month of the current quarter, he is in good standing; but if he fails to pay within that time he is not in good standing; and if his delinquency continues for six months his name is dropped from the membership roll, but he may renew his membership upon payment of all back membership dues. If a member is in good standing at the time of his death, *and* has had a continuous non-delinquent membership for twelve months next preceding his death, a death benefit of $50 is paid to the person named by him as beneficiary; if for thirty-six months, $200 is paid; if for forty-eight months, $300; if for sixty months, $400; if for seventy-two months, $500, which is the largest amount paid. Any member who shall fail to pay membership dues on or before the due date is delinquent and forfeits all right to a death benefit; but he may regain such right if, prior to his death and during the month on the first day of which his dues are payable, he pays the same in full. If he does not pay within the month, all right to a death benefit is forfeited; but if he reinstates his membership and continues the same without a delinquency for twelve continuous months from the date of such reinstatement, the right to a death benefit of $50 arises, and so on in increasing amounts, as described above, according to the length of time he continues his membership without

allowing any payment of membership dues to become delinquent.

It appears, therefore, that a member does not pay a stated amount for membership in the brotherhood and an additional amount for insurance, or death benefit, but that the amount of the membership dues is the same whether or not a death benefit is to be paid upon his decease. In other words, he pays dues for membership in a labor union and for all the privileges and advantages incident to membership in such a union; and if he remains a member for a certain prescribed period of time without any failure to pay his membership dues promptly on or before the due date, a death benefit will be paid to the person named by him. It is obvious that the provision for death benefits is intended merely as an inducement to, and a reward for, long-continued, uninterrupted membership in the brotherhood and the prompt payment of membership dues. That Kearins failed to comply with the conditions necessary to entitle the plaintiff to a death benefit is admitted by her, but she pleads and relies upon a supposed waiver of such conditions. There can be no waiver, however, where, as here, there is no freedom of choice to accept or to reject the tendered payment. When Kearins, in November, paid his membership dues that were payable in October, the brotherhood was bound to accept the payment; it could not, if it would, have refused to accept it, or any part of it, for, though the delinquency affected the right to a death benefit in the manner explained above, Kearins still was a member of the brotherhood and as such was entitled and required to pay membership dues. The brotherhood could not drop his name from the membership roll or refuse to accept his membership dues, unless and until his delinquency continued for six months. If members were required to pay a certain amount as membership dues, and a certain other amount as insurance premium, or insurance dues, an acceptance after the due date of that part paid as insurance premium, or insurance dues, would waive the

188

delinquency and estop the brotherhood from asserting a forfeiture of the death benefit based upon such delinquency; but, as we have seen, such is not the present case.

No waiver, so far as a death benefit is concerned, resulted from the acceptance, in November, of the payment by Kearins of his delinquent membership dues, and no waiver or estoppel with reference to death benefits resulted from the practice of accepting membership dues after the due date. The custom or practice referred to in the majority opinion relates only to the acceptance of membership dues after the due date. Not only was there no custom or practice to pay death benefits where a member failed to comply with the constitution and the by-laws relating thereto, but the record does not disclose even one instance where a death benefit was paid in such circumstances.

In not one of the cases cited in the majority opinion was the situation similar to that disclosed by the record in this case.

The judgment, in my opinion, should be reversed.

Mr. Justice Burke concurs in this dissenting opinion.