[No. 24896. *En Banc.* June 19, 1934.]

THERESIA BUNGE, *Appellant,* v. BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, *Respondent.*[1]

*Louis F. Bunge,* for appellant.

*Post, Russell, Davis & Paine,* for respondent.

TOLMAN, J.—This is an action to recover upon a death benefit certificate issued by the defendant brotherhood, based upon the life of Charles Bunge, the deceased husband of the plaintiff. The facts were stipulated in the court below, and after making findings accordingly, the trial court concluded that the plaintiff was not entitled to recover, and entered judgment dismissing the action. The plaintiff has appealed.

Respondent is an ordinary labor organization, designed to benefit in the usual way those employed in

[1]Reported in 33 P. (2d) 383.

certain railroad activities. It has a death benefit department, but no other feature of an insurance nature.

According to the by-laws, there is but one class of dues, and all dues are payable quarterly in advance, and if not paid within the month when they fall due, the member thus delinquent ceases to be in good standing, and thus loses his right to a seat in the lodge and the privilege of interesting the grievance committee in his affairs. If the delinquency continues for six months, the member is dropped from the rolls without notice and his membership thus automatically ended. By becoming delinquent, the member forfeits all right to any death benefit *ipso facto,* and there remains to him only the privilege, by paying the delinquent dues within six months and before he is dropped from the rolls, of reinstating himself in good standing in the order.

So far as the death benefit is concerned, by such reinstatement he becomes a new member exactly as though he were then for the first time initiated, and from that date of reinstatement he begins again to earn an interest in the death benefit fund. Only after a continuous membership of at least twelve months is any death benefit payable. If the continuous membership is for at least one year and less than two years, the amount payable is but fifty dollars. The amount increases with each year of continuous membership until, at the end of six years, the maximum payment of five hundred dollars is reached.

Thus it appears that a member pays dues to secure membership and the occupational, social and fraternal benefits that go with such membership and are inseparable from it. The death benefit is a thing apart, for which the member directly pays nothing, but it is in the nature of a reward for prompt payment of dues and

long continued non-delinquent membership, or, in other words, long continued membership in good standing.

It is agreed and admitted that Charles Bunge, the deceased, became a member of the order in 1918. He thereby accepted the by-laws of the order and became bound by them. *Miller v. Supreme Tent of the Knights of Maccabees,* 108 Wash. 689, 185 Pac. 593.

Delinquency had occurred from time to time during this membership, and always within the six months period Bunge paid the sums so delinquent and resumed his membership in good standing. These prior delinquencies are mentioned only because it is argued that they show a course of dealing long continued. That may be admitted, but if we are right as to there being no waiver on the occasion of the last delinquency, then there can have been no waiver on any prior occasion, so we omit definite mention of the delinquencies which precede the one we now consider the vital delinquency.

The dues payable July 1, 1931, amounting to the sum of four dollars, which were required to be paid before the end of that month in order to maintain Mr. Bunge's membership in good standing and his interest in the death benefit certificate, were not paid in July, nor at all until the 17th day of August, 1931. Consequently, upon the first day of August, 1931, he was a delinquent member, and had his death then occurred, his beneficiary would have been entitled to no death benefit. By the payment of these delinquent dues on August 17, he automatically again became a member in good standing, and from that date he began anew to earn an interest in the death benefit fund, but before one full year had elapsed and on June 21, 1932, he died. Hence, the refusal on the part of respondent to pay any death benefit.

When once the several by-laws bearing upon this question are considered with sufficient care to understand the meaning of the whole, as well as each and every part, it becomes self-evident that such an action as this, which confesses the default but asserts that such default was waived, cannot succeed, because there has been no waiver.

To constitute a waiver there must be an existing right and an intention to relinquish that right. 27 R. C. L. 908.

Here, on August 1, 1931, and on each day thereafter up to August 17, while the fatal delinquency existed, the respondent had no right to forfeit Mr. Bunge's membership in the order, because, though not in good standing, the by-laws gave him a six months period in which to cure his delinquency and regain his good standing. There was no call to give him notice that his then interest in the death benefit had been forfeited, because the contract, by which both were bound, made that forfeiture an inevitable and an irrevocable fact when the last day of July expired.

Mr. Bunge had, under the by-laws, six months in which to save himself from final suspension and to re-establish himself so as to begin anew to earn a death benefit. His dues were four dollars per quarter, no more, no less. He must necessarily pay four dollars to prevent final suspension and to remain a member of the order and enjoy its benefits other than the death benefit, and he was required to pay no more than that same four dollars to reenter the death benefit class and to begin again to build an interest in that fund. The respondent could not refuse to accept the four dollars paid on August 17, 1931; had, in fact, no shadow of right to refuse it, because, by doing so, it would wrongfully deny him the right to reinstatement, and therefore it relinquished nothing and waived nothing by so

accepting the payment which it was obligated to accept.

It appears that a similar case in which this respondent was a party was before the supreme court of Colorado, *Brotherhood of Maintenance of Way Employees v. Nolan,* 91 Colo. 181, 14 P. (2d) 179. There, the respondent was held liable by a divided court. We, of course, know nothing of the contents of the record before the Colorado court. If the facts disclosed were only those mentioned in the majority opinion, then clearly, in that particular case, there was a waiver, but if the facts in that case were as found to be by the minority, and such as clearly appear in the record which is now before us, then there was and could be no waiver. We are bound by the record in this case. Certain language of the dissenting opinion in that case so clearly defines and elucidates the questions here presented that we quote:

"It is clear that an insurer who, having the right to reject the payment as tendered too late, nevertheless accepts payment of an insurance premium, as such, after the time within which payment is required to be made, especially where the insurer has customarily accepted delinquent payments, waives the forfeiture that otherwise might have been enforced. . . . Under the brotherhood plan the brotherhood did not have the right to reject the payments made by Thomas Kearins and other members after the due date; it accepted the payments, as under its rules it was required to do, as membership dues, not as payment for insurance.
. . .

"It appears, therefore, that a member does not pay a stated amount for membership in the brotherhood and an additional amount for insurance, or death benefit, but that the amount of the membership dues is the same whether or not a death benefit is to be paid upon his decease. In other words, he pays dues for membership in a labor union and for all the privileges and

advantages incident to membership in such a union; and if he remains a member for a certain prescribed period of time without any failure to pay his membership dues promptly on or before the due date, a death benefit will be paid to the person named by him. It is obvious that the provision for death benefits is intended merely as an inducement to, and a reward for, long-continued, uninterrupted membership in the brotherhood and the prompt payment of membership dues. That Kearins failed to comply with the conditions necessary to entitle the plaintiff to a death benefit is admitted by her, but she pleads and relies upon a supposed waiver of such conditions. There can be no waiver, however, where, as here, there is no freedom of choice to accept or to reject the tendered payment. When Kearins, in November, paid his membership dues that were payable in October, the brotherhood was bound to accept the payment; it could not, if it would, have refused to accept it, or any part of it, for, though the delinquency affected the right to a death benefit in the manner explained above, Kearins still was a member of the brotherhood and as such was entitled and required to pay membership dues. The brotherhood could not drop his name from the membership roll or refuse to accept his membership dues, unless and until his delinquency continued for six months.''

See, also, *Brown v. Stein-Joelson Benev. Ass'n,* 170 Atl. (N. J. L.) 218.

The judgment of the trial court is right, and it is therefore affirmed.

BEALS, C. J., MAIN, MITCHELL, MILLARD, STEINERT, and BLAKE, JJ., concur.

HOLCOMB, J. (dissenting)—I cannot concur in either the reasoning or the result reached by the majority herein, and therefore dissent. In my opinion, the record here all but conclusively shows a waiver of all delinquencies, including the last one, and respondent

should be held liable upon its death benefit certificate for the full amount thereof.

Did we but follow our own rule of construction laid down in *Logsdon v. Supreme Lodge of the Fraternal Union of America,* 34 Wash. 666, 76 Pac. 292, to the effect that all the provisions respecting dues in benevolent associations must be construed together, and, as forfeitures are not favored, doubtful language will be construed in favor of the insured to avoid a forfeiture, a different result would be obtained.

In the instant case, if all the provisions of the by-laws of the brotherhood are construed together under the application of the ordinary rules governing contracts, and especially contracts of insurance, respondent is entitled to recover.

In that case, among other things, we said:

"Forfeitures are not favored, and, where language is doubtful, courts will adopt that construction which will avert a forfeiture. [Citing cases]."

The supreme court of Iowa adhered to the same principle, and in a case involving a contract of fraternal insurance, *Trotter v. Grand Lodge of Iowa Legion of Honor,* 132 Ia. 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, held, among other things, that, where a fraternal insurance association, by its agent, adopts a method of business by which assessments are habitually collected and received after they have become delinquent under the strict letter of the contract, and no forfeiture or suspension is declared thereon, and by this course of business members have reason to conclude that the association does not insist upon literal compliance with the terms of the contract, it will not be heard to deny the good standing of a member who has depended on such custom, and has paid or offered to pay his assessment in accordance therewith; and that

courts will give effect to any act or circumstance from which it may fairly be argued that the insurer has waived the right to strict and literal performance by the insured, or upon which an estoppel against forfeiture may be founded, and this rule applies to fraternal or lodge insurance. The opinion in that case was a most exhaustive and instructive review of the cases and many cases and texts were cited.

To the same effect is *Bauer v. Beauty Culturist and Barbers' Union* by a Missouri court of appeals, 61 S. W. (2d) (Mo. App.) 237. The by-laws of the union in that case were very similar to those in the instant case.

The same principle was announced in *Brande v. Fallon,* 169 N. Y. Supp. 126, by an appellate division of the supreme court of New York. In that case, the writer of the opinion answered the reason which is applied in this case by the majority, as follows:

"It is urged that the harsher construction is necessary to compel prompt payment of dues; but the argument is equally strong, perhaps stronger, that the welfare of the association is best subserved by encouraging otherwise desirable members who are in arrears for dues to pay such arrearages, by providing for a complete restoration of their former good standing; and a by-law operated to compel a forfeiture of the benefits of long-continued good standing, while restoring members to the beneficial class upon payment of arrears of dues, would be unreasonable and not in harmony with the general scheme of the by-laws."

In my opinion, the above reasoning is much sounder than that used by the majority here. Many other cases might be cited in support of the same principles, but would add nothing to the discussion.

The judgment should be reversed.

GERAGHTY, J., concurs with HOLCOMB, J.