[No. 26054. Department One. October 13, 1936.]

SHAFER BROS. LAND COMPANY, *Respondent,* v. UNIVERSAL PICTURES CORPORATION, *Appellant.*[1]

¹Reported in 61 P. (2d) 593.

*Allen & Wilkins* (*Edgar R. Rombauer,* of counsel), for appellant.

*Preston, Thorgrimson & Turner,* for respondent.

MILLARD, C. J.—On September 1, 1911, the Shafer brothers leased a lot owned by them on Second avenue, in Seattle, to John Clemmer and James Q. Clemmer for a term of ten years commencing January 1, 1912, and ending December 31, 1921. A three-story and basement store building was situated on the lot in question. The lower floor of the building was divided into store rooms and the upper floors into office rooms. The building was equipped with an elevator for service of the upper stories. It was also equipped with an electric light system and fixtures, heating equipment, pipes, plumbing fixtures for water, and toilet service. Under the terms of the lease, the lessees were given permission to make such alterations in the building as they deemed proper to change the character of the building from that of a store and business building into a theater or moving picture building. It was further covenanted that, at the expiration of the lease, the lessees should return said premises to the lessors in the same condition that they were in at the time of the execution of the lease. That covenant reads as follows:

" . . . shall return said premises to the parties of the first part in the same condition that they are now in and they shall quit and surrender the same in as good state and condition as reasonable use and wear thereof will permit, damage by the elements or fire excepted, . . ."

The lessees contemporaneously executed to the lessors a surety company bond in the penal sum of ten thousand dollars, conditioned that, at the expiration of the term, the lessees should restore the building to its original condition.

On June 29, 1914, the lessor owners of the property conveyed same to the plaintiff corporation. The lessees assigned their lease to a corporation known as the Clemmer Theatre, Inc. The lessees converted the building into a moving picture theater. In making the change, there were removed the roof and two upper stories of the building, the electric light wiring and equipment, the heating equipment, the water pipes and water equipment, the toilet fixtures and the elevator. The lessees created a complete moving picture theater with dome roof, tearing up the store floor and substituting a stepped up concrete floor, installing brick and wooden partitions with doors and door hardware, new toilets and toilet fixtures, new heating equipment, new electric wiring, ventilating equipment and light equipment, and other theater equipment and fixtures. The new plumbing, heating and lighting equipment was substituted for similar equipment in the building at the time it was leased. None of that equipment was replaced. Some was by the lessees removed from the premises and converted to their own use.

The lessees and their assignee operated in the building a moving picture theater until February 28, 1921, or within ten months of the expiration of the term of the lease. During this time, they paid the stipulated rent, except during one period of poor business when the rent was temporarily reduced. This delinquency was subsequently paid by the lessees.

On February 28, 1921, Universal Pictures Corporation paid the Clemmer Theatre, Inc., fifty thousand dollars, for which the latter transferred to the former all of the personal property situated in the building and the unexpired term of the lease, "the obligations of which second party assumes," with the right to use the name of Clemmer Theatre, Inc., until January 1, 1922. To clear the way for plaintiff to make the lease

to the defendant, the Clemmer company executed to the plaintiff lessor an assignment of the lease, and the plaintiff gave to the defendant the lease which is involved in this action.

This lease by plaintiff to the defendant was for the term of ten years and ten months; that is, it included the unexpired ten months of the term of the original lease and ten years additional. Under the terms of the new lease, the lessee was required to pay the old rate of rental for the ten-month period and an increased monthly rental for the remaining ten years. The lessee was required to make a fifteen-thousand-dollar cash rental deposit, upon which the lessor was required to pay interest. The lease contained the following provision:

"It is further agreed that at the expiration of this lease the lessee shall return said premises to the lessor in the same condition that they are now in and they shall quit and surrender the same in as good state and condition as reasonable use and wear thereof will permit, damage by the elements or fire or other unavoidable casualties excepted."

The lease further provided that, in the event the lessee failed to perform its covenants or any of them, the lessor may declare the lease at an end and exclude the lessee from possession thereof and take possession of said premises. The lease contained another provision that, should the lessee abandon the premises during the term, the lessor may let the premises in its own name or as agent of lessee, and if the full rental shall not be thus realized, the lessee shall make good any deficiency, "including any expense incurred by any such reletting, including cost of renovating, altering or decorating for the new tenant."

On May 2, 1929, the defendant subleased the theater part of the building to the Sterling Chain Theatres, Inc., for the period from May 11, 1929, to December

25, 1931, retaining a reversion of six days. The sublease provided that the sublessee keep and maintain the furniture, furnishings, fixtures and equipment contained in the theater in good condition and repair and make necessary replacements, the replacements to be the property of the sublessee at the end of the term of the said sublease.

The sublease further provided that the sublessor did thereby assign unto the sublessee all of the right, title and interest of the sublessor in and to the furniture, furnishings and equipment contained in the theater at the date of the expiration of the sublease. This assignment was conditioned, however, upon the performance by the sublessee throughout the term of the sublease of all the terms and conditions thereof. The sublease further provided that, at the expiration of the term, the sublessee should at once surrender possession of the premises to the sublessor.

Subsequent to December 25, 1931, and prior to the expiration of the lease of the defendant on December 31, 1931, the defendant executed to the Sterling Chain Theatres, Inc., an assignment of its lease for the remainder of the term. On or about January 7, 1932, and finishing on January 15, 1932, the defendant by its assignee removed from the leased premises certain of the fixtures and equipment which were installed by the lessees Clemmer and Clemmer and Clemmer Theatre, Inc., and the replacements and substitutes therefor installed by the defendant, and same were appropriated to the use of the assignee.

In the removal of the property from the leased premises, the work was done in such a reckless manner that the ceiling, walls, floor and partitions were broken and left in a dilapidated condition. At the time of the delivery of the property to the plaintiff on January 15, 1932, the building was in such a dilapi-

dated condition that it could not be rented for use as a moving picture theater.

Some months prior to the expiration of the term of the lease by plaintiff to defendant, defendant's sublessee and the plaintiff commenced negotiations for a new lease of the premises. The negotiations continued until on or about January 6, 1932, and resulted in an agreement upon practically all of the material matters of the proposed new lease. The parties sharply disagreed, however, on the matter of the security for payment of rent the plaintiff should receive. By reason of this disagreement, the negotiations for the lease were fruitless.

An action was instituted by plaintiff to recover against the defendant for the replacement value of the articles wrongfully removed and an amount to cover the damage to the building by reason of the rough and reckless manner in which the articles were removed. The plaintiff also sought recovery for the reasonable value of the use and occupation of the premises for the fifteen-day period the building was occupied by the sublessee. Counsel for defendant conceded that, if the plaintiff was entitled to compensation for the value of articles removed or for damage to the building, the defendant was liable for same, notwithstanding that such removal and damage were done by its assignee.

The cause was tried to the court, which found that plaintiff was entitled to the recovery of $6,602 on its first cause of action and one thousand dollars on its second cause of action. From the judgment entered in consonance with the findings, the defendant has appealed.

The first question is whether, under the covenant to quit the premises at the expiration of the lease "in the same condition that they are now in," the respondent is entitled to recover from the appellant

the value of the equipment removed from the building by the appellant. The covenant in question reads as follows:

"It is further agreed that at the expiration of this lease the lessee shall return said premises to the lessor in the same condition that they are now in and they shall quit and surrender the same in as good state and condition as reasonable use and wear thereof will permit, damage by the elements or fire or other unavoidable casualties excepted."

No question is raised by appellant as to the correctness of the amount of the judgment on either cause of action.

Under the terms of the first lease to the Clemmers, the lessees were obligated to reconstruct the building at the end of the term into a commercial building such as it was at the time the lease was made. Under the terms of the assignment by the Clemmers of that lease to the appellant, the assignee was obligated to perform the covenant of restoration of the building to the same condition in which it was at the time the Clemmers made the lease with respondent.

The new lease for the term from March 1, 1921, to December 31, 1931, by respondent to appellant, contained the same covenant, which is quoted above. The respondent leased to the appellant for a term of ten years and ten months the theater building equipped with permanent fixtures essential to the operation of a theater. The foregoing covenant of the lease imposed upon the appellant the obligation, upon the expiration of the lease, to quit the premises and leave them in the condition they were in at the time the lease was executed. Clearly, this contemplated the return to the lessor of a fully equipped motion picture theater and not merely the four walls, the roof and floor of a moving picture theater building.

Under the terms of the Clemmer lease, the lessee was obligated to restore the building to a commercial building. That obligation was avoided by the new lease to the appellant. Under the terms of the new lease, the appellant lessee is required to surrender to the respondent at the end of the term the fully equipped moving picture theater. This consideration takes the place of the obligation in the Clemmer lease to restore the building to its original character.

To repeat: Under the lease by respondent to the Clemmers, the latter were obligated to restore the premises at the expiration of the term to the original condition, that is, a three story and basement store and office building. Before the Clemmer lease expired, the remainder of the term of that lease was assigned to the appellant. Under the terms of the assignment, the assignee was obligated to perform the conditions of the Clemmer lease. Then the lease by respondent to appellant was executed, which lease contained the covenant for restoration of the building to "the same condition that they are now in."

In other words, the new lease relieved appellant lessee of the obligation imposed upon it by the terms of the Clemmer lease to restore the building to its original condition of a three story and basement store and office building. In lieu thereof, the appellant agreed, at the expiration of the term of its lease for ten years and ten months, to "return said premises to the lessor in the same condition that they are now in." At the time of the execution of the lease containing this covenant, the subject matter of the lease consisted of a completely equipped moving picture theater house with a complete heating system, etc. The appellant's obligation under the covenant was to return the premises to the respondent lessor in that condition.

Further buttressing the position of respondent are

other provisions of the lease that, if the premises be damaged by fire and rendered unfit for use (which of course means use as a theater), there shall be an abatement of rent until the premises have been placed in proper condition for use by the lessor. This most certainly means for use as a theater.

The lease further provides that, if the lessee vacate the premises prior to the expiration of the term, the lessor may re-let the premises, and, if the stipulated rental is not obtained, the lessee is required to make good the deficiency, including any expense incurred by any such re-letting, including the cost of renovating, etc., and said re-letting may be for a part of the unexpired term or for a new term extending beyond the original term. It is patent the re-letting would be of the premises as then conditioned; that is, a completely equipped moving picture theater.

█ █ The remaining question is whether performance of the covenant was waived.

The trial court found there was nothing in the evidence to intimate that the respondent at any time gave its permission to the appellant or to any one else to remove the fixtures or otherwise dispose of them. The court further found that the only negotiations other than those recited above were to the effect that the respondent expected to change the character of the building whereby it would be necessary to remove the fixtures on account of which this action was brought.

To constitute a waiver there must be an existing right and an intention to relinquish that right. *Bunge v. Brotherhood of Maintenance of Way Employes,* 178 Wash. 33, 33 P. (2d) 383.

The respondent's objection to the admission of evidence as to the change in the character of the building contemplated by respondent should have been sustained. Appellant by its answer did not plead waiver,

in view of which—there was no trial amendment—the evidence offered by appellant as to waiver should not have been admitted over respondent's objection. Appellant was never given permission to remove the fixtures or otherwise dispose of them. Though respondent did state that at the termination of appellant's lease, it would change the character of the theater building into that of a commercial building— and this was done—this would not grant to the appellant or its assignee the right to remove from the building any article the right to remove which it did not have prior to the happening of the circumstance. Nor would the appellant be justified thereby in damaging the building in making the removal.

We agree with counsel for respondent that the fact that respondent intended to reconstruct the building and no longer use it for theater purposes, and so stated, would not transfer to appellant the title to any of the articles removed from the building. There is no evidence nor reasonable inference from evidence of an intention on the part of respondent to waive its title to any of the articles removed from the building.

We have considered all the authorities cited. A discussion of same would serve no useful purpose, as those authorities are either distinguishable from, or are not out of harmony with, what we have said.

The judgment should be, and it is, affirmed.

MITCHELL, TOLMAN, STEINERT, and BLAKE, JJ., concur.