[No. 15573.    Department One.    December 5, 1919.]

LORENA MILLER, *Appellant,* v. SUPREME TENT OF THE KNIGHTS OF THE MACCABEES OF THE WORLD, *Respondent.*[1]

INSURANCE (196) — MUTUAL BENEFIT ASSOCIATION — BY-LAWS — PRESUMPTIONS. The by-laws of a mutual benefit association are binding on all its members, who are conclusively presumed to know them, although adopted subsequent to the contract.

SAME (196). A member of a mutual benefit association who fails to report and pay extra premiums for a more hazardous employment engaged in, thereby changes the amount of his life benefit, where the by-law provides for an increased rate and that, unless the change is reported and extra rate paid, the benefit paid for accidental death shall be $300 on the basis of a $1,000 certificate.

Appeal by plaintiff from a judgment of the superior court for Pierce county, Clifford, J., entered March 28,

[1]Reported in 185 Pac. 593.

1919, in favor of the plaintiff, in an action on a benefit certificate, upon withdrawing the case from the jury. Affirmed.

*J. W. Anderson* and *H. W. Lueders,* for appellant.

*Ballinger & Hutson,* for respondent.

PARKER, J.—The plaintiff, Lorena Miller, seeks recovery upon a benefit certificate issued to her husband, Collins H. Miller, deceased, by the defendant, the Supreme Tent of the Knights of Maccabees, a fraternal benefit association. The cause proceeded to trial in the superior court for Pierce county, sitting with a jury, when, at the close of the introduction of evidence upon both sides, counsel for the defendant moved the court:

"to withdraw the case from the jury and determine, as a matter of law, that the plaintiff, on the evidence, is entitled to a judgment for nine hundred dollars, and no other sum."

This motion was granted and judgment rendered accordingly. From this disposition of the cause, the plaintiff has appealed to this court.

The benefit certificate sued upon certifies that:

"Sir Knight Collins H. Miller has been regularly admitted as a member at Billings, state of Montana, and that in accordance with, and under the provisions of the laws of the Supreme Tent of the Knights of the Maccabees of the World, he is entitled to all the rights, benefits, and privileges of membership therein, and that at his death one assessment on the membership, not exceeding in amount the sum of three thousand dollars, will be paid as a benefit to Lorena Miller, bearing relationship to him of wife."

The certificate was issued on March 14, 1902. In the written application of Miller for membership in the association he stated his occupation to be railroad

brakeman.   Before issuing the certificate, the head officers of the association, desiring to know whether Miller was a passenger or freight brakeman, made inquiry of the local tent at Billings, Montana, and received a card in reply thereto through the mail, purporting to be signed by Miller, stating, over his supposed signature, his occupation to be a passenger brakeman.  This information was sought by the head officers manifestly because the occupation of freight brakeman was classed by the laws of the association as hazardous, and called for the payment of fifty cents per month additional dues on each thousand dollars of the life benefit stated in the certificate of membership.  There is some dispute as to whether or not the name signed to this statement purporting to have been made by Miller is in fact his signature.  We think, however, that will appear, as we proceed, to be of no moment in our present inquiry.

The head officers of the association then proceeded on the assumption that Miller was a passenger brakeman and that he was properly paying dues according to the rates prescribed for such risk, until the change in the laws in 1911, to be presently noticed, after which, as we shall see, it was of no concern to any one but Miller himself which rate he paid, since the amount of his life benefit was thereafter controlled by the rate he paid.  From the time of his becoming a member of the association until the time of his death, Miller paid monthly dues to the association of one dollar per month on each one thousand dollars of the maximum of his life benefit of three thousand dollars specified in the certificate of membership, that is, three dollars per month.  This was then, and ever since has been, the rate prescribed by the laws of the association to be paid by members of his age employed as passenger brakemen.

At the time Miller became a member of the association, he was employed by the Northern Pacific Railway Company as a brakeman upon a train running regularly over a branch line from Billings to Red Lodge, in Montana, which train was a mixed freight and passenger train. For two years immediately preceding his death, Miller was employed by the company as a yard brakeman, commonly known as a switchman. About ten o'clock at night, on April 17, 1917, Miller was found in a dying condition in the railway company's yard at Auburn, where he was employed, lying on a switch track near the end of a box car which he had a few moments before been seen riding on the top of, evidently with a view to stopping it on the switch track in the making up of a train, it having been detached from the switch engine and proceeded by its own momentum to the point where it stopped, near where Miller was found. His skull was fractured. He died a few hours later. For the present we proceed upon the assumption that the evidence touching the cause of Miller's death showed conclusively that his death was the result of a violent accidental cause, and that the court was warranted in so concluding instead of submitting that question to the jury.

At the time Miller became a member of the association, its laws prescribed, among other things, as follows:

"Hazardous Occupations

"Sec. 416.—The occupations named in this section shall be deemed hazardous, viz.:

"Engineers and firemen employed on all railroads; conductors, brakemen and flagmen in yards or employed on railroad freight trains; switchmen, yardmen . . .

"Extra Rate.

"Provided that all railroad employes hereafter admitted and who may be included in the occupations

named in the first paragraph of this section shall pay fifty cents extra on each one thousand dollars of life benefits, based on the table of monthly rates fixed in these laws.    .   .   .

"Change of Occupation.

"Sec. 417.—Members may change occupations, but no benefits shall be paid on account of the death or disability of such member while engaged in any hazardous occupation named herein, unless he has reported such change of occupation and has paid to the record keeper of his tent the extra rate therefor within three days after making such change."

In the year 1911, the laws of the association were duly changed and the above quoted provisions modified by the following provision:

"Any member who at the time of his admission shall be engaged in, or any member of the association who shall hereafter engage in, any of the occupations enumerated in this section, and who is not paying the extra rate, if his death occurs from accidental causes while engaged in such occupation, howsoever happening, his beneficiary shall receive only such sum as is herein specified to be paid for the particular class of occupation in which the member was so engaged at the time of his death.

"Class 2. Switchmen, the benefit to be paid in case of accidental death being $300, on the basis of a $1,000 certificate."

Miller never notified the officers of the association that he had changed his employment to switchman from that of passenger brakeman, and never offered to pay the additional rate of fifty cents per month per thousand on the maximum benefit specified in his certificate of membership.

It would seem that, had the laws of the association remained unchanged from the time Miller became a member to the time of his death, there could be no recovery upon this certificate in any amount, since there would then have been a complete forfeiture because

of his failure to report the change in his employment
to the hazardous one of switchman from that of pas-
senger brakeman, which he claimed, and the associa-
tion assumed, was his employment when he became a
member. This, however, is not our present problem.
The association is not claiming forfeiture of the life
benefit which Mrs. Miller is entitled to under the cer-
tificate, but only claiming that, because of Miller's
failure to report the change of his employment and
pay the extra rate prescribed by the laws of the asso-
ciation, he thereby voluntarily worked a change in the
amount of his life benefit from three thousand dollars
to nine hundred dollars, under the laws of the associa-
tion as amended in 1911. If we are correct in assum-
ing that Miller's death was the result of a personal in-
jury accident, rather than of sickness of some nature
apart from personal injury, it seems plain that the
trial court in taking the case from the jury and ren-
dering judgment in favor of Mrs. Miller, awarding and
limiting her recovery to nine hundred dollars, must be
affirmed. It is an elementary beneficiary association
law that the laws of such an association are binding
upon all its members and all are conclusively presumed
to know them. Bacon, Benefit Societies (3d ed.), § 81;
Niblack, Benefit Societies (2d ed.), § 18, 136; 19
R. C. L., page 1198; *Benes v. Supreme Lodge, Knights
& Ladies of Honor,* 231 Ill. 134, 83 N. E. 127, 121 Am.
St. 304, 14 L. R. A. (N. S.) 540, and note.

It is conceded that the laws of the association,
above quoted, were lawfully adopted by the associa-
tion, and it is plain they constitute as much a part of
Miller's contract of insurance as does the certificate
itself. There was no evidence introduced upon the
trial tending in the least to show facts which would
work an estoppel against the association and in favor

of Miller, in so far as the binding force and effect of the above quoted laws of the association, as amended in 1911, is concerned. The only claim is that Miller was never furnished a copy of the association's laws and was, in fact, ignorant thereof; but it is not claimed that he could not have had a copy of the association's published pamphlet containing the laws, including those above quoted, by merely asking for one. The amendment of the association's laws of 1911, above quoted, seems to us so plain as to not admit of argument as to its meaning; that is, that Miller, never having paid to the association the extra fifty cents per month per thousand in order to keep his benefit certificate in full force to the maximum of three thousand dollars, after his employment became that of a switchman, he thereby in effect changed the amount of his life benefit from three thousand dollars to nine hundred dollars. The supreme courts of Minnesota and Nebraska have considered this problem presented in almost the exact manner that it is here presented, both courts reaching the same conclusion that we here reach. *Abell v. Modern Woodmen of America,* 96 Minn. 494, 105 N. W. 65, 906; *Modern Woodmen of America v. Talbot,* 76 Neb. 621, 107 N. W. 790.

Some contention is made in appellant's brief that it was erroneous to decide, as the trial court did, that Miller's death was the result of a personal injury accident, instead of submitting that question to the jury. We presume the thought of counsel in this connection is that the jury would have been warranted in finding, under the evidence, that Miller's death was the result of some sickness apart from his injury suffered but a few hours before his death, and that such finding would call for the awarding Mrs. Miller recovery in the sum of $3,000. We are somewhat at a loss to understand just how counsel for appellant would have

us dispose of the case should we conclude that this contention of theirs is well grounded, for we find in the concluding language of the brief the following: ·

"We contend that the court committed prejudicial error . . . in withdrawing the case from the consideration of the jury and directing judgment to be entered for $900 instead of allowing her the amount which the premium paid would purchase for the hazard actually incurred. We respectfully submit that, on the record in this case, the judgment of the lower court must be reversed, a judgment rendered in favor of appellant in the sum of $2000."

Nowhere in appellant's brief are we asked to award her a new trial, but are thus asked to render a final decision in her favor awarding her two thousand dollars, as a matter of law. The theory of counsel manifestly is that the amount of dues paid by Miller, to wit, three dollars per month, would have purchased a two thousand dollar life benefit, even though he be employed as a switchman, and that we should now decide, as a matter of law, that Mrs. Miller be awarded recovery in that sum. It may be conceded that Miller could have, by the payment of three dollars monthly dues, had the full benefit of a two thousand dollar benefit certificate, even while employed as a switchman; but he never sought to obtain any such a contract from the association, so his contract automatically became, under the last above quoted provision of the laws of the association, as amended in 1911, a life benefit certificate for nine hundred dollars, in the event of his death being the result of an "accidental cause." We are, however, quite convinced that the evidence was such as to compel the finding that Miller met his death as a result of the personal injury accident occurring to him a few hours before his death, and that therefore the trial court correctly so decided as a matter of law.

Our conclusions reached upon the questions above noticed render it unnecessary to discuss the other questions presented in the briefs of counsel for the appellant, for however we might view them, the judgment of the trial court would have to be affirmed.

The judgment is affirmed.

Holcomb, C. J., Main, Mitchell, and Mackintosh, JJ., concur.