[No. 31285. Department One. August 3, 1950.]

PETER N. SCHROEDER *et al., Respondents,* v. MERIDIAN IMPROVEMENT CLUB *et al., Appellants.*[1]

[1]Reported in 221 P. (2d) 544.

*Houghton, Cluck, Coughlin & Henry,* for appellants.

*Stanley C. Soderland,* for respondents.

SCHWELLENBACH, J.—This is an appeal from a judgment setting aside a deed to the real property sold by appellant corporation and quieting title in the corporation.

In 1936, the property owners and residents of the Meridian district in Seattle organized themselves into a club for the improvement and advancement of their district. Regular meetings were held, speakers were obtained, and quite enthusiastic interest was shown in the club's activities.

February 24, 1943, the club incorporated, under the terms of Rem. Rev. Stat., §§ 3872 to 3878 [P.P.C. §§ 457-1 to 457-13], inclusive, and amendments thereto. Its name was Meridian Improvement Club, and the purposes for which it was formed were:

"To create a social, educational and charitable society, establish and maintain club rooms for meetings of its members and others, provide speakers on topics of current interest, and encourage discussion and study of such subjects, and particularly to promote the general welfare of Seattle's Meridian district by bringing its residents into closer association with one another and providing a community club in which they may unite in studying and dealing with problems of civic and community interest."

March 3, 1943, the corporation's constitution and by-laws were regularly adopted.

March 3, 1943, John W. Holbach, a member who had bought the property which is the subject matter of this action, sold it under contract to the corporation for a clubhouse. The purchase price was $1,220, payable $20 or more a month, plus 5% interest. October 17, 1943, eleven members subscribed $100 each and purchased the property from Mr. Holbach, setting up a trust agreement which will be discussed later.

Interest in the club dwindled until, on April 1, 1947, there were only thirteen paid-up members. The executive board met and decided to sell the property. It was indicated that it had a value of between $7,000 and $7,500.

April 15, 1947, the members met and discussed the sale. Mr. Louks, a member, offered $4,000 cash for the property. After considerable discussion, a majority voted to accept his offer.

May 20th, a protest meeting was held at the office of Mrs. Scott, a former member, who operated a real-estate office in the same block as the club. Several former members were present, as well as residents and property owners of the district who had never been members. Twenty dollars was collected and a committee appointed to offer the dues of those present to the secretary of the club. The offer was refused. (The minute book of the club shows that, at the September 16, 1946, meeting, it was reported that Mrs. Scott had offered $3,500 for the building.)

At any rate, the sale to Mr. Louks was completed, payment made, the subscribers of $100 each were paid the balance remaining on their subscriptions, and, after all costs and expenses had been paid, the sum of $274.80 was distributed to each of the paid-up members. This action was then commenced.

The amended complaint alleged that the defendants fraudulently conspired to and did convert the property of the club to their own use; that defendants fraudulently agreed to accept no new members after April 1, 1947, and refused to recognize the rights of plaintiffs as members of the corporation; that no notice was given to plaintiffs of the proceedings; that several named plaintiffs were members in good standing, and, as such, had ownership rights in the property of the corporation; that, as to those plaintiffs who had contributed $100 each as a part of the trust agreement of October 17, 1943, the action of defendants was in derogation of their property rights in the corporation; that certain plaintiffs who had never been members, but were property owners or residents within the Meridian district, and therefore eligible to membership, had tendered their dues and were refused.

The trial court held that the constitution and by-laws were not complied with in selling the property and winding

up the affairs of the corporation; set aside the deed to Louks and quieted title in the corporation; and enjoined the officers of the club from (1) dropping from membership rolls, or denying membership rights to, any present or former dues-paying members of the club; or (2) refusing to accept dues from members delinquent in the payment of their dues, or (3) refusing to receive applications for membership from all bona fide residents of the Meridian district, or (4) disposing of any property or assets of the club.

Our first problem is to determine whether or not any of the respondents have any right to bring this action. Regardless of whether or not we approve of the actions of appellants, or whether such actions were legal or illegal, we cannot grant respondents any relief unless they themselves are entitled to maintain the action.

Article V of the constitution of the corporation provides:

"Any property owner or resident within the confines of the district shall be eligible for membership on payment of yearly dues as provided in the By-Laws."

The by-laws provide in part:

Article V. "The meetings shall be open in character, any resident in the district may be accorded the privilege for a specified time allotted by the presiding officer to address the Club on questions of interest to its members; but only Club members shall be eligible to vote on Club affairs and only property owners of record may vote on matters of taxation, assessments and other matters involving expense to property."

Article VI. "The yearly dues shall be fifty cents (.50) which amount will cover the membership of both husband and wife in a household and such dues shall be paid in advance and shall cover the current year's dues to January the 15th of the following year. Only members in good standing shall be allowed to vote. Any member who fails to pay his dues for the current year by April 1st. will be considered in bad standing and his membership shall cease."

Article IX. "Any member who fails to pay his dues for the current year by April 1 will be considered in bad standing and his membership rights shall cease."

█ A corporation differs from an unincorporated association or club in that the latter is not ordinarily a legal entity distinct from its component individuals; whereas, a corporation is always and necessarily a distinct and separate legal entity. Corporations are divided into stock corporations and nonstock or member corporations. The corporation under consideration falls within the latter category. The legal entity, rather than the component members, holds title to the property. Nevertheless, such holding by the corporation is for the use and benefit of the members, and, in the event of a dissolution, each member would have a right to have distributed to him a pro rata share of the proceeds of sale, after all debts and the expenses of sale and dissolution had been paid.

█ Because a member has a right to a share of such proceeds, he has a present interest in the property of the corporation to the extent that no group of officers or members can, without complying with the constitution and by-laws, impair his ultimate right to share in the proceeds in the event of dissolution. But this right exists as an incident of membership and not because of any ownership of the property of the corporation. Such a right is dependent upon membership, and it expires with a loss or termination of membership.

"The property rights of members of an association upon the withdrawal of one generally depend upon the provisions of the constitutional by-laws. Usually, if a member abandons the association, he thereby renounces his interest in the property, and those who remain and succeed him are entitled to his interest. This is true even in the case of the withdrawal from membership of one who had entered into a commercial society. The rule obtains, it has been held, even though one announces that his withdrawal is only temporary, pending an adjustment of differences, and that he shall insist upon his rights as a member. This is the rule, also, as to seceding or expelled members of an association or society." 4 Am. Jur. 476, Associations and Clubs, § 33.

"The rights of members in the property of an incorporated club are defined in the law of the state and in the charter, constitution, and by-laws of the corporation. Ordinarily,

such stockholders are not tenants in common of the club property. A member of a club organized as a nonprofit corporation, whose membership is terminated, has no right or interest in the property of the corporation except such as is given him by the articles and regulations of the corporation." 14 C. J. S. 1290, Clubs, § 18.

Rem. Rev. Stat., § 3872, provides that two or more persons within this state who associate themselves together by an agreement in writing, with the intention of forming a corporation for any of the purposes "hereinafter specified," shall be and remain a corporation. The objects of such association are listed in Rem. Rev. Stat., § 3873:

"Such association may be formed for any educational, charitable, benevolent or religious purposes; for the prosecution of any antiquarian, historical, literary, scientific, medical, artistic, monumental or musical purpose; for supporting any missionary enterprise having for its object the dissemination of religious or educational instruction; for promoting temperance or morality in this state; or other charitable or social bodies of a like character and purpose; for the establishment and maintenance of social clubs, and of places for reading rooms, libraries or social meetings."

It will be seen that the corporation with which we are here concerned is not a stock corporation, organized for profit, but rather an association of individuals who have joined together into a social and improvement club for the advancement of the Meridian district.

The members adopted a constitution and by-laws to govern the affairs of the corporation. We find nothing in the constitution or by-laws which is illegal, oppressive, or contrary to public policy. They were binding upon all its members and all were conclusively presumed to know them. See *Miller v. Supreme Tent of Knights of Maccabees,* 108 Wash. 689, 185 Pac. 593.

The amended complaint lists three groups of plaintiffs who, it is contended, were entitled to prosecute this action: (1) certain named individuals who were, it is alleged, paid-up members of the corporation at the time of the commencement of the action; (2) certain named individuals who claimed a right in the property of the corporation because

each had contributed $100 as a part of the trust agreement of October 17, 1943; and (3) those plaintiffs who had never been members but who claimed the right to membership by offering to pay dues, because they were property owners or residents of the Meridian district.

■ Considering these allegations inversely: (3) None of this group had ever been members of the corporation. It is true that Article V of the constitution provided that "any property owner or resident within the confines of the district *shall be eligible for membership.*" "Eligible" means suitable, qualified, fit, worthy, capable of being chosen. See *State ex rel. Reynolds v. Howell,* 70 Wash. 467, 126 Pac. 954, 41 L. R. A. (N.S.) 1119. But merely being eligible for membership does not entitle them to maintain this action. They were not and never had been members.

"Membership in a voluntary association is a privilege which may be accorded or withheld, and not a right which can be gained independently and then enforced. The courts cannot compel the admission of an individual into such an association, and if his application is refused, he is entirely without legal remedy, no matter how arbitrary or unjust may be his exclusion." 4 Am. Jur. 462, Associations and Clubs, § 11.

■ (2) The trust agreement of October 17, 1943, was between eleven members, designating themselves as "beneficiaries." They each put up $100 and bought the real-estate contract from Mr. Holbach. They designated three of their number as trustees, who would hold the legal title to the property in trust for the beneficiaries. It was agreed that, if and when the contract (at $20 a month, plus 5% interest) was fully paid off, the trustees should deed the property to the club. However, if the club were unable to pay any installment when it fell due, it would have a ninety-day period of grace (three successive thirty days' notices of arrearages) in which to make such payment. If, after such notices, payment were not made, the trustees were authorized to forfeit the contract, sell the property, and distribute the proceeds pro rata among the eleven *beneficiaries.* It will thus be seen that the only interest which the benefi-

ciaries had was to obtain a return of their contributions plus interest and, in case of forfeiture, obtain a pro rata share of the proceeds of the sale. Here there was no forfeiture. The beneficiaries received their contributions back with interest. They had no further interest in the property of the corporation. Their only interest was as beneficiaries by virtue of the trust agreement.

(1) None of the named plaintiffs had paid their 1947 dues at the time the action was commenced. The trial court found, in finding VII, that one member (Mr. Schroeder) in good faith had attempted to pay his 1947 dues in March, 1947. The only testimony regarding any such transaction was that given by Mrs. Schroeder. She testified that she and her husband had been members of the club; that they paid their 1946 dues; that they went to California in February, 1947, and returned March 20th; that upon their return they went to the club but that there seemed to be no meeting; that it was not a regular meeting night and the clubhouse was not open; that they offered their dues at the meeting at Mrs. Scott's office on May 20th. We fail to find anything in the record to substantiate the trial court's finding that Mr. Schroeder attempted in good faith to pay his 1947 dues in March, 1947.

By-laws may be self-executing, or may require affirmative action on the part of the corporation or its officers to inflict a penalty or effect a forfeiture provided for by by-law. Boisot on By-Laws (2nd ed.) 174, § 150. There is a distinction between a loss of membership for failure to pay dues, and an expulsion for crime or misconduct inimical to the organization's being. In the latter instance, the member must be given a hearing after notice, before he can be expelled. However, the by-laws may provide for a loss of membership *ipso facto* for failure to pay dues, and, when that is the case, notice is not necessary unless specially provided for. See 12 Fletcher, Cyclopedia Corporations (Perm. ed) 992, § 5695, and cases cited therein.

"The fact that a club or society is incorporated does not in any way affect its right to make its own rules and by-laws, unless there is something in its charter or in the gen-

eral law under which it was incorporated which controls it in this respect, since the exercise of this power is the right of every corporation. An incorporated social club may regulate, through its by-laws, the causes for the expulsion or suspension of members and the manner of effecting the same, when such power is expressly conferred by its charter. It is also a rule of general application that one who has become a member of an incorporated social club will be deemed to have known and assented to the provisions of its charter and by-laws, which it was authorized to make, and cannot object to the enforcement thereof on the ground that he is deprived of any legal or constitutional right. However, the by-laws must be limited to the powers enumerated in the corporate charter, plus those necessarily implied from the object of incorporation." 4 Am. Jur. 460, Associations and Clubs, § 8.

Turning now to the by-laws, we find that any member who fails to pay his dues for the current year by April 1st will be considered in bad standing and his membership shall cease. Respondents are conclusively presumed to have known these provisions. They were self-executing; no notice was necessary.

Upon the failure of any member to pay his 1947 dues by April 1, 1947, his membership ceased *ipso facto*, and with the loss of membership went any interest in the property of the corporation. At the time it was decided to disincorporate and sell the property, none of the respondents had membership in the corporation. They therefore had no interest which could have been affected by the action of the members and are not entitled to maintain this action.

The judgment is reversed, with directions to dismiss the action.

Simpson, C. J., Beals, Grady, and Donworth, JJ., concur.