PEARSON, Judge.
The defendants, appellants here, James L. Wall, Sr., and Wall Plastering Company, a Florida corporation, are employers of union plasterers. The plaintiff, appellee here, Bureau of Lathing and Plastering of Dade ■County, Florida, Inc., is a nonprofit corporation whose members are union plasterers, ■union lathers and employers of each. Plaintiff’s expressed purpose is to promote the lathing and plastering industry.
The Bureau brought suit against Wall and the Wall Company alleging that they became members of the Bureau and signed a “compliance form” which constituted a contract whereby the signors agreed to pay into the Bureau treasury three cents per hour per man for each union man employed by them. It is further alleged that the ■defendants refused to turn in reports or pay the monies due. The cause was brought in equity for an accounting and a judgment. The answers of Wall and the Wall Company presented several affirmative defenses as follows:
1.That the Bureau is merely a vehicle designed to enable unions to enforce closed-shop provisions against these defendants in violation of the ■Constitution of the State of Florida and the United States and the laws of the State of Florida.
2. That at the time that the defendants signed the agreement they did so under compulsion and threat of the member unions and that therefore the agreement was void and of no effect.
3. That the Bureau had never functioned under its by-laws and that the monies had been misused.
Based upon the complaint and answer the court took testimony to determine whether an accounting should be required. McCann Plumbing Co. v. Plumbing Industry Program, Fla.App.1958, 105 So.2d 26, 27. Thereafter the chancellor entered an interlocutory decree providing as follows:
“1. The contract sued on is, upon the evidence in this case and upon the authority of McCann Plumbing [Co.] v. Plumbing Industry Program, Inc. [Fla.App.], 105 So.2d 26, a valid and enforceable agreement under which the Defendants obligated themselves to pay the Plaintiff, Bureau of Lathing and Plastering, of Dade County, Florida, Inc., the sum of three cents (3$⅞) per hour for all hours worked by the journeymen lathers, plasterers, and apprentice members of Locals 7 and 345 in the employ of the Defendants.
“2. The Plaintiff, therefore, is entitled to an accounting from and payment by the Defendants for the sums due the Plaintiff from the Defendants under the said agreement, from September 14, 1957 to date, plus interest and costs.
“3. The said accounting shall ’be rendered forthwith and should the parties be unable to agree on the result, method or procedure thereof, they or either of them may apply to this Court for further direction.”
From the above quoted interlocutory decree the defendants, Wall and the Wall Company brought this interlocutory appeal and presented assignments of error which essentially raised the question as to whether the uncontradicted evidence before the *769 chancellor was such that he was required to sustain one or more of the affirmative defenses filed. In addition, one point is urged which does not appear in the answer, that is, whether the Bureau is entitled to an accounting for the period subsequent to an attempted resignation by Wall and the Wall Company.
It is apparent from the first numbered paragraph of the interlocutory decree that the chancellor placed his finding, that the contract sued upon was not illegal, upon McCann Plumbing Company v. Plumbing Industry Program, Fla.App.1958, 105 So. 2d 26, 28. In that case we considered a very similar contract which was, however, between the employer, McCann, and a plumbing union. The portion of that opinion dealing with the alleged illegality of the contract is the last paragraph, which is as follows:
“The appellant in its remaining points has urged that the entire contract was void and therefore unenforceable as to the covenant under consideration. It is argued that the contract was (1) void as a restraint upon trade and (2) void as a closed shop agreement. There is no showing that the appellant ever renounced its contract with the plumbers local union. Indeed its refusal to perform was limited to the covenant to contribute to the program of the plaintiff non-profit corporation. These questions could not be resolved without extensive testimony as to the actual operation of the agreement. It is not enough for the defendant-appellant to simply raise the questions, inasmuch as the agreement is not shown to be void upon its face, and evidence as to its alleged illegal operation is not shown by any reference to the record to have been presented to the chancellor. Therefore, these questions cannot be initially determined here.”
It is apparent therefore that our determination in the McCann case was that the contract between McCann and the union was not void on its face as being either in restraint of trade or a closed shop agreement. We must therefore examine the record before us in an attempt to determine whether or not the manifest weight of the evidence impels a finding that the contract in the instant case was in restraint of trade or a dosed shop agreement. Only if such a holding is necessary upon the record would the presumption that the interlocutory decree is without error be overcome.
It is contended that the Supreme Court of Florida in Local Number 234 of United Ass’n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U. S. and Canada v. Henley & Beckwith Inc., Fla.1953, 66 So.2d 818, 820, determined a similar contract to be illegal because it was a closed shop agreement. In that case the Supreme Court held that a contract between the local union and Henley & Beckwith Inc. was void as a closed shop agreement against the declared public policy of the State of Florida. The article of the contract in question as set forth in the opinion is as follows:
“No member of Local No. 234 shall work for an employer who is not a party to this Agreement, except for firms recognized by the United Association [of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada] as fair, and engaged in the fabrication or erection of equipment or devices that come under the jurisdiction of [said] United Association, and no employer shall work or employ any Journeyman who is not a member in good standing of Local No. 234.”
The holding in that case does not appear to be determinative of the legality of the contract in the instant case. It will be noted that the contract in the instant case is between the employer and the nonprofit corporation.
Wall and the Wall Company urge that the following provision in the by-laws of the *770 Bureau of Lathing and Plastering, which they agreed to comply with, makes it a closed shop agreement:
“Article IV — Board of Governors.
“1. The Board of Governors shall consist of fifteen members. The members of the Board shall be chosen as follows:
Five plasterer members by the B. M. & P. I. U., Local # 7.
Five lather members by the W. W. & M. L. I. U., Local # 345.
Five employer members by employers of plasterer members of B. M. & P. I. U., Local '# 7 and/or lather members of W. W. & M. L. I. U., Local # 345.
“2. The unit rule for voting shall apply; with five votes from Labor and five votes from Management.
“3. The entire direction and management of the affairs, interests and property of the Bureau shall be vested in the Board of Governers. The Board may exercise any and all powers of the Bureau and do all such lawful acts and things as are not, by law, by the Bureau Constitution, or by these Bylaws directed or required to be done or exercised by the members.
“4. Members of the Board of Governors shall be elected annually for a term of one year and shall hold office until their successors are elected and qualify.
“5. Meetings of the Board of Governors shall be held quarterly during the months of March, June, September and December. At the September meeting of the Board, officers of the Bureau shall be elected for one year.
“6. Special meetings of the Board of Governors shall be called at the request of two or more members of the Board. The time and place shall be designated at the calling of the meeting.
“7. Special meetings of the Board shall be held on the day following notification from the Executive Director that there are cases of violation requiring trial and disposition by the Board. The Board shall, without delay, give written notification to the B. M. & P. I. U., Local # 7 and the W. W. & M. L. I. U., Local # 345 for union menir-bers to be removed from the jobs of an employer when he is found guilty of violation by the Board.
“8. Unless otherwise specifically provided by law, by the Bureau Constitution, or by these By-Laws, the acts of a majority of the members of the Board of Governors present at any properly convened meeting shall be the acts of the Board.
“9. The Board of Governors shall appoint as Standing Committees a Promotion Committee and a Code Compliance Committee. It may also appoint such other committees as it deems necessary and may invest such committee with such powers and assign such duties as it sees fit. All committees shall make such reports and keep such records as may be required by the Board of Governors.” [Italics added]
It is the appellant’s contention that the above quoted portion of the contract considered together with one or more of the following circumstances: (a) the entire contract contains no provision for the employer to hire nonunion help, (b) the entire constitution and by-laws of the Bureau agreement deal with union help, (c) the fact that three cents an hour is to be enforced by the union who could certainly not enforce it as to nonunion employers, leaves as the only reasonable conclusion that the contract is nothing more than a closed shop agreement under the guise of a nonprofit corporation. This conclusion is based upon the premise that a possibility of illegal operation is sufficient to invalidate the entire contract.
*771 The test as to whether an apparently valid contract is actually something else (as for example an illegal contract void as against expressed public policy) is the actual operation of the contract itself. Stewart v. Steams & Culver Lumber Co., 56 Fla. 570, 48 So. 19, 25, 24 L.R.A..N.S., 649. In the instant case the defendants, Wall and the Wall Company, argue that the contract, even though expressly for a legal purpose, was actually intended to accomplish an unlawful purpose. They demonstrate with a great deal of vigor that the terms of the contract are susceptible to such an interpretation. Upon the other hand they do not designate for our consideration any portion of the record wherein the contract has been shown to operate in restraint of trade or as a closed shop agreement. In addition there is in the record testimony by the executive director of the Bureau which provides sufficient grounds for the finding of the chancellor that the operation of the contract in this instance was not illegal but was for a purpose in keeping with the public policy of the State of Florida.
The defense that the defendants, Wall and the Wall Company, were coerced into the signing of the contract did not appear in either the McCann case, supra or the Henley & Beckwith Inc. case, supra. It is of course a good defense to a contract that the apparent consent given was not real but compelled by coercion. Cooper v. Cooper, Fla.1954, 69 So.2d 881, 883. The defendants’ testimony, however, in support of their plea of coercion was contradicted by substantial testimony. There is no indication that the defense was not fully considered by the chancellor upon the basis of the conflicting evidence. We cannot say that the record does not support a finding by the chancellor that coercion was not proved in the instant case.
 The appellants do not urge error upon the chancellor’s finding that their third defense, that the Bureau had never functioned, was not proved. We next pass to a consideration of their contention that the plaintiff is not entitled to an accounting for the period subsequent to their resignation from the association in July of 1958. An examination of the record reveals the uncontradicted testimony of Mr. Wall that he resigned from the nonprofit corporation in July of 1958. A reading of the charter and by-laws of the association shows that no method is provided whereby a member may resign. It must therefore be accepted that Mr. Wall was no longer a member of the Bureau of Lathing and Plastering of Dade County, Florida, Inc., after July 1958. This is true because where there is no provision for resignation, the general right of a member of a voluntary association to withdraw therefrom at any time, and have his resignation effective immediately, must prevail. Finch v. Oake, 1 [1896] 1 Ch. (Eng.) 409 and cases cited at 4 Am.Jur., Associations and Clubs § 20, 7 C.J.S. Associations § 24 and 99 A.L.R. 1441. We therefore hold that the portion of the interlocutory decree which found that the plaintiff is entitled to an accounting from the defendants for sums claimed to have accrued under the agreement after July 31, 1958 to be erroneous. In all other particulars the interlocutory decree is affirmed and the entry of an amended interlocutory decree in accordance with this opinion is directed.
Affirmed in part and reversed in part.
HORTON, C. J., and CARROLL, CHAS., J., concur.