PHARMACISTS AND RETAIL DRUG STORE EMPLOYEES UNION, LOCAL 330, Affiliated with the Retail Clerks International Association, AFL–CIO, Plaintiff,

v.

LAKE HILLS DRUG CO., Lakeside Drug Co. (Bellevue), Lakeside Drug Co. (Redmond), Lakeside Mercer Drug, Inc., and M & D Prescriptions, Inc., Defendants.

No. 5913.

United States District Court
W. D. Washington, N. D.
March 11, 1964.

Richard P. Donaldson, of Bassett, Donaldson & Hafer, Seattle, Wash., for plaintiff.

Wallace Aiken, of Aiken, St. Louis & Steere, Seattle, Wash., for defendants.

## MEMORANDUM DECISION

BEEKS, District Judge.

██ Initially the Court must decide whether it has jurisdiction of this action under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185 (a), in view of the fact that the plaintiff union, a majority of whose members are non-supervisory employees, represents and bargains for some persons who are "supervisors" as defined in the Act.

Defendants contend that because the plaintiff union includes "supervisors" within its membership, it is not a "labor organization representing employees" within the meaning of Section 301. Plaintiff, on the other hand, argues that neither Section 301 nor Section 2(5) which defines "labor organization" specify that the labor organization must be composed exclusively of non-supervisory employees; that if a union represents some "employees" and some "supervisors," it is nonetheless a "labor organization representing employees."

The only case brought to the attention of the Court involving the question of union representation of supervisory personnel in which the question of jurisdiction under Section 301 was raised is A. H. Bull Steamship Co. v. National Marine Eng. B. Ass'n., 250 F.2d 332 (2d Cir. 1957), cert. denied 355 U.S. 932, 78 S.Ct. 411, 2 L.Ed.2d 414. Defendants contend that *Bull* compels this court to decline jurisdiction of the action or in the alternative to limit the action to non-supervisory personnel. The Court does not agree.

First, although there is strong dicta in *Bull* to the effect that there was no jurisdiction under Section 301, the court did not so hold. Secondly, it should be noted that the court in *Bull* was dealing with an entirely different set of facts than exist in this case. In *Bull* it appeared to be the fact that the *only* persons represented by the union in the Section 301 action and who were covered by the contract in question were supervisory personnel and that there were *no* statutory employees involved at all. It would have been completely contrary to the spirit if not the letter of the language of Section 301 for the court to have upheld jurisdiction under such circumstances.

The Court does not believe that the reasoning of *Bull* should be applied in a case such as this where most of the employees in the bargaining unit are statutory employees and only a few are supervisors and, where in addition, the employer has voluntarily bargained with the unit and, in effect, treated the supervisory personnel as employees for the purpose of bargaining. While Section 14(a) of the Act, 29 U.S.C.A. 164(a), was intended to prevent an employer from being *compelled* to bargain with supervisory personnel, the section also provides that individuals employed as supervisors shall not be prohibited from becoming or remaining members of a labor organization. A careful reading of Section 14(a) leads to the inescapable conclusion that an employer may voluntarily recognize supervisory personnel as employees for the purpose of bargaining. Certainly, when a supervisor exercises the right given him by Section 14(a) and joins a union which represents other statutory employees, and an employer voluntarily treats such person as an employee for the purpose of bargaining, it cannot be said that the union is no longer a "labor organization representing employees." Nor can it be said that the employer has in any way been compelled to treat the supervisor as an employee. The cases of N. L. R. B. v. Edward G. Budd Mfg. Co. (6th Cir. 1948), 169 F.2d 571, and Local Union 1055 etc. v. Gulf Power Co. (D.C.Fla.1959), 175 F.Supp. 315, are not directly in point, the former not arising under Section 301 and the latter not involving a specific attack on jurisdiction, but they do, however, but-

tress the conclusion reached by this Court.

The Court, therefore, finds that it has jurisdiction of the action under Section 301 of the Act, 29 U.S.C.A. 185(a).

■ Assuming that the industry-wide bargaining agreement covering the period from September 16, 1962 to September 15, 1964, is valid, are defendants bound by it?

It is admitted in the pretrial order that for several years prior to 1962 all defendants were members of the Seattle-King County Pharmaceutical Society, the multi-employer bargaining unit involved in this case, and were all covered by the industry-wide agreements negotiated by it, including the agreement covering the period from September 16, 1960 to September 15, 1962, which immediately preceded the agreement in question. If there is any doubt that membership in the Society also included representation by the Society in labor matters, it is eliminated by an examination of the form of membership application which includes an express delegation of such authority to the Society.

The Court therefore finds that prior to 1962 the defendants were all members of the Society and had authorized the Society to act as their labor arbitrator. The only real question then, indeed the very heart of this action, is whether the defendants effectively withdrew from the Society during 1962.

There is no question but that defendant M & D Prescriptions, Inc. did not withdraw inasmuch as on July 10, 1962, it signed a form reaffirming the authority of the Society to negotiate on its behalf and sent it to the plaintiff.

With respect to the remaining defendants, it is admitted in the pretrial order that at no time prior to, or during, the negotiations leading to the signing of the agreement in question on December 10, 1962, did any of the defendants notify the Society in writing, or otherwise, that they desired to withdraw from membership.

In addition, the by-laws of the Society provide, in part, that "the resignation of any member shall be made to the Executive Secretary in writing, but no resignation shall be accepted from any member who is in arrears in dues."

There is no evidence whatsoever that any of the defendants had actual knowledge of the provisions of the by-laws. Are they charged with constructive knowledge thereof?

It is the general rule that members of a voluntary unincorporated association are presumed to have knowledge of and are bound by the constitution and by-laws of the association. In fact, cases in the State of Washington indicate that the presumption of knowledge is conclusive. Miller v. Supreme Tent of the Knights of Maccabees, 108 Wash. 689, 185 P. 593 (1919); Schroeder v. Meridian Improvement Club, 36 Wash.2d 925, 221 P.2d 544 (1950).

The Court, therefore, finds that at no time during 1962 did any of the defendants effect a withdrawal or resignation from membership in the Society and were and are bound by the collective bargaining agreement in question.

■ Assuming arguendo, that the Court is incorrect in this regard and that defendants by their failure to pay dues, or otherwise, successfully withdrew from membership as far as the Society is concerned, was such withdrawal effective insofar as plaintiff union is concerned?

Plaintiff contends that the National Labor Relations Board has established certain ground rules concerning an employer's withdrawal from a multi-employer bargaining unit and that even assuming that defendants' failure to sign authorization cards distributed by the Society at its Kirkland meeting in October of 1962 was a withdrawal from the unit, such withdrawal was not timely, was not unequivocal and was not brought to the attention of the union and was therefore ineffective.

Defendants do not contest the requirements of the Board but insist that they are not binding on this Court and that

even if they are, the conduct of the parties in this case indicates that the Society and the union recognized that defendants had withdrawn their authorization to the Society to act in their behalf.

With respect to the Board's rules regarding withdrawal from a multi-employer group, the Court has some doubt as to whether the Board has consistently followed the abstract ground rules enunciated by way of dicta in Retail Associates, Inc. v. Retail Clerks Int'l., 120 NLRB 388 (1958). In subsequent cases the Board has refused to adopt these abstract ground rules as dispositive of the cases before the Board and has proceeded to decide such cases according to their own facts. See Detroit Window Cleaners Union v. Daelyte Service Co., 126 NLRB 63 (1960); General Teamsters Local No. 324 (Cascade), 127 NLRB No. 55 (1960); Cosmopolitan Studios, Inc., 127 NLRB No. 102 (1960).

It can, however, be stated with certainty that the rules of the Board expressed in numerous cases require that insofar as a withdrawal affects the union's rights, it must be unequivocal, and reasonable and appropriate as to timing and notice under all of the circumstances.

The Supreme Court said in Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), that the substantive law to apply in Section 301 suits is to be fashioned from the policy of our own national labor laws. Recently that Court has looked to decisions of the National Labor Relations Board to determine questions arising under Section 301. Local 174, Teamsters Local 174, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

This Court does just that. Whatever might be the situation in a contest between the defendant employers and the Society, the Court must and does adopt the requirements of the Board that to be effective as against the union, an employer's withdrawal must show an unequivocal manifestation of an intent to withdraw which must be brought to the union's attention in a timely manner.

Defendants contend that this has been accomplished and that the facts so indicate. In this respect, the Court makes the following observation: The testimony of Mr. Donald Spawn, manager of defendants' stores and the principal defense witness, is of no value to the Court because of his amazing inability to recall anything which might be detrimental to him. Without the benefit of such testimony, the facts upon which defendants predicate their position that both the union and the Society had timely knowledge of their unequivocal intention to withdraw are as follows:

Prior to July of 1962, the union had been relying on the records of the Society for information concerning the identity of the individual employers represented by the Society and with whom the union had contractual relations. Sometime prior to July 6, 1962, counsel for the union suggested to the union that it should have complete records of its own and so on that date the union, following the advice of counsel, sent a letter to each of the employers covered by the 1961–1962 agreement, including the defendants, which reads as follows:

"Please be advised that this Union desires to open our current collective bargaining agreement for the purpose of negotiating changes and additions thereto. We are hopeful that we can reach agreement on such changes and additions prior to September 15, 1962 but, if such agreement cannot be reached, we shall terminate the agreement at that time.

"In the past we have been advised that you have authorized the Seattle-King County Pharmaceutical Society to represent you for the purpose of negotiating with this Union. In order to keep our records straight in this respect would you please complete the attached statement and return it to us in the self-addressed envelope as soon as possible. Thank you."

Enclosed with the letter was a form on which each employer was to designate the manner in which it desired to bargain. M & D Prescriptions, Inc. filled out the form and indicated a desire to bargain through the Society, but the other defendants took no action whatsoever.

Learning of this action on the part of the union, Mr. Duckering, Executive Secretary of the Society, became incensed over what he considered to be an intrusion by the union into Society business and he notified the Society members to return the forms to him and not to send them to the union. Mr. Duckering and Mr. Peters, the union representative, both testified that Mr. Duckering informed Mr. Peters that he had given such instructions to his members.

Thereafter, at a meeting of employers, some members of the Society and some not, held at Kirkland, Washington on October 30, 1962, for the purpose of discussing the status of negotiations with the union, Mr. Duckering, in order to remove any confusion caused by the issuance of the union forms and in order to recruit employers who had not previously joined the Society, circulated forms of application for membership, which forms also included a provision authorizing the Society to bargain for the members in labor matters.

Representatives of the defendants, including Mr. Keller, Mrs. Burrows and Mr. Spawn, were present at the meeting, but no applications were signed on behalf of any of the defendants.

Thereafter on November 30, 1962, Mr. Duckering delivered to Mr. Peters a letter forwarding a list of the stores that had authorized the Society to bargain for them. None of the defendants' names appeared on the list. Mr. Duckering testified that notwithstanding a statement in the letter indicating that to his knowledge the list was complete, he informed Mr. Peters at that time that the list was only partial containing only the names of those signing application forms at the Kirkland or other similar meetings. It is also admitted in the pretrial order that

Mr. Duckering so informed Mr. Peters, and if there is any doubt that the list was in fact only a partial list, the Court finds it to be a fact because M & D Prescriptions, Inc. had informed the union that the Society was acting in its behalf and its name was not on the list.

Defendants contend that because they did not return the union form and did not sign the application form submitted at the Kirkland meeting, they effectively indicated to the union and to the Society their intention to withdraw from the multi-employer group.

The fact that the union did not receive forms from four of the five defendants would seem to have little significance since Mr. Peters of the union had been informed by Mr. Duckering that he had instructed his members not to return the forms to the union. Further, the fact that defendants did not sign the application forms circulated at the Kirkland meeting and that their names did not appear on the list which Mr. Duckering thereafter gave to Mr. Peters does not in any way compel the conclusion that defendants thereby effected withdrawal because (1) defendants were already members of the Society at the time of the meeting and there was no necessity for their filling out additional application forms and (2) that list included only the names of employers who had filled out forms at the Kirkland and other similar meetings. Even if it could be said that the failure of the Society to include defendants' names on the list indicated that the Society knew defendants had withdrawn, the union had no such knowledge because they had been informed that the list was only partial.

At no time did defendants ever give clear, unequivocal and specific notice of their intention to withdraw to the union or to the Society. If they had the intention of doing so, a reply to the union's letter of July 6, 1962, would have been an ideal way in which to have expressed such intent and would have come at a most appropriate time inasmuch as the union was then indicating its intention of reopening the contract then in force.

Thus, the facts show conclusively that at no time did the defendants convey to the plaintiff union a manifestation of an intent to withdraw from the multi-employer bargaining unit and pursue an independent course of action. The Court therefore finds that there was no withdrawal on the part of the defendants which was effective as against the plaintiff union.

■ Again, assuming arguendo that the Court is incorrect in this regard, there is ample evidence to justify an application of the doctrine of estoppel. Subsequent to the happening of the events which defendants claim indicated their withdrawal, they continued making payments to the union health and welfare plan thereby providing important benefits not only to their employees but also to their own stockholders.

■ Finally, the Court must decide whether the collective bargaining agreement in question is void, in whole or in part, inasmuch as it purports to cover pharmacists who are either "professional employees" or "supervisors," or both, as those terms are defined in the National Labor Relations Act.

Defendants contend that Section 9(b) (1) of the Act, 29 U.S.C.A. 159(b) (1), precludes the National Labor Relations Board in a certification proceeding from establishing a unit containing professional employees among others, in the absence of a self determination election among the professional employees affected, and that therefore because no such election has ever been held to determine the will of the majority of the pharmacists in this case, the contract is invalid.

The Court will not belabor this point because it believes that the case of Retail Clerks Union Local 324 v. Vincent Drugs, Inc., 144 NLRB No. 108 (1963), is dispositive of the question. Irrespective of the effect of Section 9(b) (1) on Board action in a certification proceeding, the Court is of the view that it was never intended to invalidate a contract covering an employee unit which includes both professional and non-professional em-

ployees where the parties to the contract have voluntarily entered into such an agreement.

For the reasons heretofore stated in the Court's discussion of jurisdiction, defendants' contention that the contract is illegal because it purports to cover "supervisors" has no merit. Local Union 1055 etc. v. Gulf Power Co., supra.

Counsel for plaintiff shall prepare an interlocutory order in accordance with this opinion for presentation to the Court at 9:30 a. m. on March 18, 1964. As provided in the pretrial order, the Court shall retain jurisdiction of the matter and continue further hearing thereon until April 13, 1964, in order to afford the parties an opportunity to agree upon the amount of damages and the proper form of judgment.