Kenneth RAULSTON et al., Appellants,

v.

James M. EVERETT et al., Appellees.

No. 8531.

Court of Civil Appeals of Texas, Texarkana.

Feb. 7, 1978.

Pat C. Beadle, Beadle & Beadle, Clarksville, for appellants.

Hardy Moore, Paris, Austin Guest, Clarksville, for appellees.

CORNELIUS, Chief Justice.

In 1967 the plaintiffs O. L. Ford, Thomas Welch, Tinnie Garrison and Conde Rodriques, together with several other persons, formed the Dimple Grazing Association and incorporated it as a Texas non-profit corporation. It was created under the supervision of and in cooperation with the Farmers Home Administration of the U. S. Department of Agriculture for the purposes of purchasing and holding grazing lands for the joint use of its members. The organization was a membership corporation, as distinguished from a stock corporation, each member being issued a "membership certificate" to evidence his status as a member. The corporation began its existence with some thirteen members. A $411,550.00 loan was obtained from the Farmers Home Administration and was used to purchase approximately 2600 acres of grazing lands. A set of by-laws was adopted which provided,

inter alia, that each member would be obligated to graze a specified number of cattle on the land each year and pay the sum of $40.27 per animal grazing unit (being one cow with calf or one bull) per year as grazing fees. The fees were to be used to pay the expenses of the organization and to retire the land purchase note. The by-laws further provided that other assessments could be imposed upon the members by a vote of the directors. According to the by-laws a member's status could be terminated by a voluntary surrender of his membership certificate or by forfeiture of the same by vote of the directors for failure to pay assessments (as distinguished from grazing fees). The number of members fluctuated through the years, with several members surrendering their certificates and others failing or refusing to graze cattle on the corporation's land and to participate in the affairs of the organization. The corporation experienced increasing financial difficulties and loss of member participation, and by 1971 only four members, the defendants Kenneth Bishop, Richard Boggess, Jack Pollock and Kenneth Raulston, were grazing cattle on the land, attending meetings and actively participating in the management. At the January 12, 1972, meeting a resolution was adopted asserting that those four persons were the only remaining members of the association, and a sale of the corporation's land was discussed. On February 14, 1973, the sale was effected. The sale of the land produced a net profit of $130,408.20, which was divided equally among the four defendants. On March 16, 1973, a resolution ratifying the sale of the land and purporting to dissolve the corporation was adopted. Thereafter, the plaintiffs Ford, Welch, Garrison and Rodriques,[1] contending that they were still members of the organization on March 16, 1973, filed suit against the defendants individually to recover their pro rata share of the profits from the land sale. Trial was to a jury which found that each of the plaintiffs had waived his membership in the corporation prior to January 1, 1973. The trial court, however, disregarded the jury's verdict and rendered judgment non obstante veredicto, awarding each plaintiff the sum of $19,-561.23, allegedly being one-eighth of the profits [2] realized from the land sale.

The defendants have appealed from the judgment below contending that the membership rights of the plaintiffs were subject to loss by waiver, and that inasmuch as the jury found that such rights had been waived, the trial court should have entered a take-nothing judgment. The plaintiffs contend that, as a matter of law, they were still lawful members of the corporation at the time the land was sold, and there was no waiver. It was undisputed that plaintiffs' membership certificates had not been physically surrendered or forfeited or cancelled in accordance with the applicable provisions of the by-laws.[3]

To sustain the trial court's action in disregarding the jury verdict and rendering judgment non obstante veredicto, we must find either (1) that, as a matter of law, the plaintiffs could not waive or abandon their membership in the Dimple Grazing Association, Inc. short of a surrender or legal cancellation of their membership certificates, or (2) that, if such membership were subject to loss by waiver or abandonment, there is no evidence that such a waiver or abandonment was in fact accomplished.

There are two types of corporations—stock corporations and non-stock or membership corporations. 18 C.J.S. Corporations § 19, p. 399; *Schroeder v. Meridian Improvement Club,* 36 Wash.2d 925, 221 P.2d 544 (1950). The entity involved here is

1. Originally included as plaintiffs were Charles Martin and James Everett, both of whom thereafter filed disclaimers.

2. The resolution of March 16, 1973, recited that a net profit of $130,408.20 was realized, with $32,602.05 being distributed to each defendant. In response to interrogatories, however, each defendant answered that he received $39,-122.46 from the land sale.

3. There were also several other persons who, although not active in the organization, still held uncancelled and unsurrendered membership certificates. They were not joined in the suit either as plaintiffs or defendants.

of the latter type. A non-profit *membership corporation,* although a corporate entity, is in other respects similar to an unincorporated association, and generally speaking, the same rules concerning members and their rights apply to both. See for example *Order of St. Benedict v. Steinhauser,* 234 U.S. 640, 34 S.Ct. 932, 58 L.Ed. 1512 (1914); *Liggett v. Koivunen,* 229 Minn. 114, 34 N.W.2d 345 (1948); *Schroeder v. Meridian Improvement Club,* supra; *Flanagan v. Benvie,* 58 N.M. 525, 273 P.2d 381 (1954); *Clearwater Citrus Growers' Ass'n v. Andrews,* 81 Fla. 299, 87 So. 903 (1921); *Wall v. Bureau of Lathing & Plaster. of Dade County,* 117 So.2d 767 (Fla.Dist.Ct.App.— 3rd Dist.1960); *Perata v. Oakland Scavenger Co.,* 111 Cal.App.2d 378, 244 P.2d 940 (1st Dist.1952); *Arizona Rangers, Inc. v. Bisbee Company,* 11 Ariz.App. 252, 463 P.2d 836 (1970). A member of such an organization acquires not a severable right to any of its property or funds, but merely a right to the joint use and enjoyment thereof so long as he continues to be a member. 7 C.J.S. Associations § 27b, p. 70; *Liggett v. Koivunen,* supra. Usually, if a member withdraws from or abandons the organization, his membership is terminated, his right to share in the association's property upon dissolution is lost, and those who remain and succeed him are entitled to his interest. *Flanagan v. Benvie,* supra; *Liggett v. Koivunen,* supra; 7 C.J.S. Associations § 27b, p. 70; 6 Am.Jur.2d, Associations and Clubs, Sec. 24, p. 450. The rule has likewise been applied to incorporated non-profit membership organizations. See *Clearwater Citrus Growers' Ass'n. v. Andrews,* supra; *Schroeder v. Meridian Improvement Club,* supra; *Arizona Rangers, Inc. v. Bisbee Company,* supra. Generally speaking, the termination of one's membership must be by voluntary act of the member or by act of the organization pursuant to authority granted by the charter or the by-laws. 6 Am.Jur.2d, Associations and Clubs, Sec. 26, p. 453. But it may also be terminated by waiver or abandonment, provided there is sufficient proof thereof. *Schroeder v. Meridian Improvement Club,* supra; *Clearwater Citrus Growers' Ass'n. v. Andrews,* supra. In general, every right [4] may be lost by waiver or abandonment, whether such right is secured by contract, conferred by statute or guaranteed by the Constitution. 1 C.J.S. Abandonment § 5, p. 13; 60 Tex.Jur.2d, Waiver, Sec. 2, p. 183. An abandonment or waiver must be voluntary and intentional, but it need not be proved by express declaration, but may be inferred from the surrounding circumstances. 1 C.J.S. Abandonment § 4, p. 12.

With the foregoing principles in mind, we note the following evidence presented by the defendants: O. L. Ford ceased to participate in the corporation's affairs after 1969. He grazed no cattle after 1969, neither paid nor offered to pay any grazing fees since 1969, attended no meetings since 1969, and "just left it up to the fellows that were left there to run it . . .". Thomas Welch grazed no cattle after 1968, neither paid nor offered to pay any grazing fees after 1968 and attended only one meeting after 1968, which was in the spring of 1969. Tinnie Garrison removed his cattle from the corporation's lands in 1970, never thereafter grazed any cattle or paid or offered to pay any grazing fees, and never attended any meeting after 1970. Conde Rodriques grazed no cattle after 1970, never attended any meeting after 1970, neither paid nor offered to pay any grazing or other fees after 1970, told Jack Pollock that he was quitting the organization, and "just left it up to someone else" to take care of the corporation and its obligations. All of the plaintiffs acknowledged that they knew the corporation was required to make the payments on the FHA mortgage or lose the land, and that the grazing fees which each member was obligated to pay were depended upon for that purpose. On the other hand, the evidence showed that each of the defendants remained active in the organization from the time he became a member,

---

4.   In Texas title to real property may not be lost by abandonment. *City of Corpus Christi v. McCarver,* 275 S.W.2d 194 (Tex.Civ.App.San Antonio 1955), rev'd on other grounds, 155 Tex. 153, 284 S.W.2d 142 (1955); 1 Tex.Jur.2d, Abandonment, Sec. 5, p. 5.

participated in the meetings, served as a director and/or officer, was active in managing the corporation and maintaining its property, and faithfully grazed his cattle on the corporation's lands each year and paid the applicable grazing fees. The jury, upon such evidence, found that each of the plaintiffs had waived his membership rights in the association.

The authorities speak of losing one's membership rights by abandoning the organization and its purposes, whereas the jury issues here inquired if plaintiffs "waived" their membership rights, but in a case of this type, waiver and abandonment are almost identical. See 60 Tex.Jur.2d, Waiver, Sec. 2, p. 183. In fact, waiver is a species of abandonment. *Jordan Drilling Co. v. Starr,* 232 S.W.2d 149 (Tex.Civ. App.El Paso 1950, writ ref'd n.r.e.). Indeed, the definition of waiver which the trial court gave to the jury was the same as that for abandonment, i. e., ". . . the intentional relinquishment of a known right." That definition has been approved in Texas for both waiver and abandonment. See *The Praetorians v. Strickland,* 66 S.W.2d 686 (Tex.Com.App.1933, judgmt. adopted); *Lashbrook v. Altum,* 391 S.W.2d 549 (Tex.Civ.App.Austin 1965, no writ); 60 Tex.Jur.2d, Waiver, Sec. 1, p. 181; 1 Tex. Jur.2d, Abandonment, Sec. 1, p. 2. Thus, the jury's findings of waiver can be deemed the equivalent of findings that the plaintiffs abandoned the organization and their membership rights therein.

We recognize that the by-laws of the corporation provided for the termination of a member's status by voluntary surrender of his certificate of membership or by the forfeiture of that certificate by act of the directors for failure to pay lawful assessments, and that neither was literally done in this case, unless it can be said that by abandoning the organization and its purposes, a member has, in effect, voluntarily surrendered his certificate. But the physical surrender of the certificate itself is not absolutely necessary for a termination of one's membership. The certificate does not constitute the membership relation; it is

but the evidence of that relation. See 18 C.J.S. Corporations § 258, pp. 721, 722. Obviously, in a proper case, that relation may be terminated without a physical surrender of the certificate. For example, can it be doubted that a letter of resignation delivered by a member to the corporation, although unaccompanied by a physical delivery of the certificate, would be an effective termination of a member's status? We think not. Compare *Wall v. Bureau of Lathing & Plaster. of Dade County,* supra.

Plaintiffs' membership rights being subject to loss by waiver or abandonment, and the jury having found such waiver upon sufficient evidence, the trial court should have rendered a judgment that the plaintiffs take nothing. For the reasons stated, the judgment of the trial court is reversed and judgment is here rendered that the plaintiffs take nothing.

Reversed and rendered.