Jeffrey Ann LASHBROOK et vir, Appellants,

v.

Herman Edward ALTUM, Appellee.

No. 11300.

Court of Civil Appeals of Texas.

Austin.

May 26, 1965.

See publication Words and Phrases for other judicial constructions and definitions.

————◆————

Harris & Holbrook, R. O. Harris, Jr., Killeen, Mitchell & Gilbert, Arthur Mitchell, Phillip W. Gilbert, Austin (on appeal only), for appellants.

No brief filed by appellee.

HUGHES, Justice.

This appeal is from an order of the District Court of Bell County declaring Lisa Ann Altum to be a "dependent and neglected child" and terminating all parental rights, making her a ward of the court and committing her to the care, custody and control of Herman Altum "subject to the continuing jurisdiction and further orders of this Court."

Herman Edward Altum, appellee, is the paternal grandfather of Lisa Ann Altum. Her mother, Jeffrey Ann Lashbrook, joined by her husband, Major R. L. Lashbrook, an aviation officer in the United States Army, are appellants.

On August 18, 1964, appellee filed a petition in the court below alleging, under oath, that Lisa Ann Altum appeared to be a dependent and neglected child within the meaning of Art. 2330, Vernon's Ann.Tex. Civ.St., and specifically alleging "That said child is dependent or neglected in that said child is dependent upon the public for support, destitute, homeless, abandoned and also the said child has no proper parental care or guardianship."

The petition alleged the father of Lisa to be Lee Edward Altum, Route 1, Belton, Texas, and the mother to be Jeffrey Ann Lashbrook, Fort Hood, Texas.

On the day this petition was filed, the trial judge "ordered that any peace officer or probation officer taken into immediate custody the said child and transfer the said child into the immediate temporary custody of Herman Edward Altum, pending any and all further orders of this Court."

On August 24, 1964, appellants answered the above petition by filing a general denial.

The record does not disclose that the father of Lisa was cited to appear or that he in fact appeared in the trial court.

After a hearing, the court, on September 18, 1964, entered the order from which this appeal is taken.

Appellee has filed no brief herein and under Rule 419, Texas Rules of Civil Procedure, we are entitled to accept appellants' statement of the case as correct.

Because of the nature of the case, we have not availed ourselves of the benefits of this rule but have carefully read the entire, and rather long, statement of facts.

It is our opinion that there is not one shred of evidence to support the judgment of the trial court and that appellants' no evidence point should be and is sustained.

On the very day that appellee filed his petition seeking to have his granddaughter declared to be a dependent and neglected child she was residing with him and his wife (grandmother), and had been so residing for about three years prior to such time. There is no suggestion in the record that Lisa was not given proper care by her paternal grandparents. In fact, the evidence shows that she has been showered with the love, care and attention which grandparents normally bestow on their grandchildren. Lisa's education, both religious and secular, has not been neglected. Her physical needs have always been amply supplied.

We do not dwell longer on this phase of the case because the testimony of appellee and his wife indicate that the claim that Lisa is a dependent and neglected child is based wholly on the ground that Lisa has

been abandoned by her parents. We will discuss this contention as it relates to appellant [1] only.

Appellant and Lee Edward Altum were married in December 1950. They were divorced in 1954, in which proceedings appellant was awarded custody of Lisa, their daughter, then about two years of age. Lisa had lived with her mother until the divorce in July 1954, after which she stayed with the grandparents, Altums, until December 1955. From December 1955 until February 1956, Lisa stayed with her mother. From this time until August, 1958, Lisa stayed with the Altums. From August 1958, until June 1959, Lisa lived with her mother and went to school in Austin. Lisa spent the next three months with the Altums. From September 1959, until August 1960, Lisa lived with her mother and went to school in Austin. From August to December 1960 Lisa stayed with the Altums and went to school in Belton. From December 1960 until May 1961, Lisa lived with her mother and attended school in Austin. From this time on Lisa has lived with the Altums in Belton and has attended school there.

Appellant has had two marriages intervening between her divorce from Mr. Altum and her marriage to Major Lashbrook in November 1963.

The record shows that Lisa's father has not contributed to her support since he was discharged from the Army although court proceedings were instituted for that purpose. The evidence also shows that the support money sent by the Army was retained by appellant even though Lisa was living with the grandparent Altums during the period covered by such payments.

The evidence does not show that appellant has contributed to the support of her daughter during the time she has lived with the Altums except for occasional gifts of clothing and the like. Nor does the evidence show that the Altums requested any aid from appellant in the support of Lisa.

Appellant, since her first marriage, has lived in Waco, Austin, Killeen, and perhaps, in Gatesville, except for a period of three months in New York, during which period Lisa was with her mother. All of these Texas towns are within short driving distances from Belton.

The evidence shows the Altums, appellant and her mother, the maternal grandmother, Mrs. Doris Enoch, were all on very friendly terms with each other. There was always free communication between them. The visits between these persons are too numerous to detail. During Lisa's life Mrs. Enoch has missed spending only one of Lisa's birthdays with her. Lisa, her mother and the grandparents have spent every Christmas together.

During all of this extremely close relationship between appellant and the Altums there was never any word spoken by or any conduct of the Atlums, to the knowledge of appellant, which indicated that the Altums considered themselves to be anything but grandparents to Lisa. The discord arose for the first time when in August 1964, the Altums refused to permit appellant and her husband to move Lisa to their home in Killeen.

Mr. Altum testified that when school was out in 1961, appellant called from Austin and told him "to come and get Lisa;" that he and Mrs. Altum went after her; that all her clothes, winter and summer, and her other personal belongings were packed and ready to go. Appellant did not tell the Altums how long she wanted them to keep Lisa. She has been there since.

■ This evidence and the opinions of the Altums that appellant had abandoned Lisa constitute all the evidence of substance upon which the trial court based his judgment. Considering the relationship of the parties, all the circumstances, and the na-

---

1. Mrs. Lashbrook is indicated when the singular is used.

ture and role of grandparents, it is our opinion that there is no evidence to support a finding that appellant has abandoned her daughter.

"It is well settled that before the drastic remedy of declaring a child dependent and neglected can be applied, the unfitness of the parent or parents should clearly appear from the evidence." Martin v. Cameron County Child Welfare Unit, 326 S.W.2d 31, San Antonio, Tex.Civ.App., C.C.A., writ. ref., n. r. e.

In Gaston v. Gaston, 371 S.W.2d 707, Houston, Tex.Civ.App., C.C.A., writ ref., n. r. e., opinion by Chief Justice Bell, the Court considered a case having some similarities to ours. There the trial court set aside jury findings that a child was dependent and neglected and granted judgment to the contrary. The Court of Civil Appeals affirmed and we quote from its opinion:

"What appellants really rely on to show dependency is abandonment. They seek to have this inferred from the fact that appellees did not support the child from 1958 to October, 1961, nor offer to do so, and with the two exceptions above mentioned did not inquire about the child. These facts alone are not determinative. Certainly the undisputed evidence shows that appellants knew when they first got the child in September, 1957, that appellees were in hard circumstances and they wanted to help out. Appellees did not want the child to go but finally consented if appellants would agree to return it upon request. While appellants deny such agreement, they in fact did return the child in December as requested. In January, 1958, when the child was taken with the consent of appellees, though they reluctantly agreed to it, it was again done by appellants to help appellees because of the difficult circumstances. As W. H. Gaston testified on trial, when he took the child it was the doing of a brotherly act.

When asked when it ceased to be a brotherly act, he answered it had not ceased to be one.

"Unquestionably the evidence fails to show that appellees abandoned the child and left it to public charity and ceased to be concerned with its welfare. Appellants at all times knew where appellees were. They never called on appellees for any support or sought to return the child. Appellees knew the appellants had a good home; they knew W. H. Gaston had an honorable and responsible position; they knew appellants were taking an income tax deduction that was more advantageous in the light of their relative incomes and number of dependents. Too, Mrs. Miriam Gaston's illness was of a nature that the passage of time would tell whether a recurrence was likely. John Gaston had a right, under all circumstances, to believe the child was being well cared for by his brother and if the brother felt he should or could no longer care for the child he would get in touch with him."

■ The relationship between a grandparent and a grandchild is much closer, and the ties are much stronger, than those existing between an aunt or uncle and a nephew and niece. No grandparent who is worthy of the name would covertly design to claim parental rights over a grandchild. If such a claim is to be made, it should only be after fair and full notice to the parents. They, the parents, should not be lulled into a false sense of security by actions of a grandparent which bespeak love but harbor dissimulation. When the Altums first realized that they could not keep Lisa on a temporary basis, forthrightness demanded that they so inform her mother for then, and only then, could she consciously "abandon" her daughter. "Abandonment" is the intentional relinquishment of a known right. It must be voluntary, absolute, and must amount to a total desertion. 1 Tex. Jur.2d, p. 2, 64 Tex.Jur.2d, p. 1. The evi-

dence to fulfill these requirements is completely lacking.

The Altums have been most generous in helping their former daughter-in-law and in caring for her daughter. They have been imposed upon and used, perhaps abused, but not against their will. They have a deep love for Lisa. They will be hurt when she leaves them. This is the lot of grandparents.

No contention is made that appellant is an unfit person to rear her daughter. She should not be denied this privilege or relieved of its obligation and responsibilities when she is ready and able to assume them.

The judgment of the trial court is reversed and judgment is here rendered denying appellee any relief sought by him in the court below.

Reversed and rendered.