

## NUMBER 13-21-00023-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

### IN THE INTEREST OF M.F.R.G., A CHILD

**On appeal from the County Court at Law
of Aransas County, Texas.**

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Benavides**

The trial court terminated the parental rights of Mother and Father to their daughter M.F.R.G.[1] Only Father appeals. By three issues, Father contends that: (1) the trial court erred in failing to appoint his parents (Grandparents) as managing conservators in accordance with his affidavit of relinquishment; (2) the evidence was legally and factually insufficient to support findings that he committed one or more statutory predicate acts or omissions under family code § 161.001(b)(1); and (3) the evidence was legally and

---

[1] To protect the identity of minor children, we utilize aliases for the children and related parties. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

factually insufficient to support the finding that termination was in the child's best interest. We affirm in part, reverse in part, reverse and render in part, and remand for further proceedings.

## I.   BACKGROUND

Mother has a long history with the Department of Family and Protective Services (Department). She suffers from drug addiction and mental illness. In September 2019, the Department received a report that Mother tested positive for methamphetamine and may be using around fourteen-month-old M.F.R.G. Mother confirmed to the Department that she was getting high while caring for M.F.R.G. She also reported that Father was in prison.

Initially, the Department left M.F.R.G. in Mother's care and tried to develop a safety plan for Mother and M.F.R.G., but the Department was unable to identify a person willing to be an ongoing safety monitor. In November 2019, Mother left M.F.R.G. with paternal Grandparents where she would reside for fourteen months during the pendency of this suit.

In December 2019, the Department filed its petition to terminate the parental rights of Mother and Father, and a bench trial was held in December 2020. Conservatorship caseworker Stephanie Ortega testified on behalf of the Department. Ortega stated that Mother tested positive for methamphetamine during the pendency of the suit, and the Department lost contact with her after she moved to Abilene, Texas. Mother did not appear at trial.

Ortega testified that Father has been incarcerated during the pendency of the suit and has "four or five years" remaining on his sentence. Ortega acknowledged that, although his circumstances prevented him from meeting all the requirements of his family services plan, Father completed an anger management class and self-improvement course in prison. Father was subsequently transferred to another unit that did not offer any programs due to COVID-19 restrictions, and Ortega agreed that it was impossible for Father to complete any remaining requirements after his transfer. Ortega stated the Department was recommending termination because Father was "unable to meet [M.F.R.G.'s] needs."

Ortega further testified that the Department was recommending that M.F.R.G. be removed from her placement with Grandparents and placed with two unrelated individuals that previously adopted two of M.F.R.G.'s siblings[2] "so we can begin the process of adoption and providing her with permanency." She explained that this other family, initially considered a "secondary" placement option by the Department, was unwilling to accept M.F.R.G. until the Department decided to seek termination. Ortega acknowledged that Grandparents were meeting all of M.F.R.G.'s needs but explained that the Department no longer supported placement with Grandparents because, according to Department policy, they were not currently eligible to adopt M.F.R.G. The Department's policy requires a prospective adoptive parent to receive a favorable home study. In this case, Grandparents had yet to receive a favorable home study because Grandfather was missing paperwork showing the final disposition of some "drug related" charges that

---

[2] The siblings were the subject of a prior parental termination suit. One sibling has a different father than M.F.R.G.; the other is a full-blooded sibling.

occurred twenty or thirty years ago.[3] Ortega said Grandparents could still receive a favorable home study by providing the missing paperwork, and if so, Grandparents would become a viable option for permanency in the eyes of the Department.

The trial court terminated Mother and Father's parental rights, appointed the Department as permanent managing conservator, and ordered that M.F.R.G. be placed with the other family. This appeal ensued.

## II.    AFFIDAVIT OF RELINQUISHMENT

Father first argues that the trial court erred in failing to appoint paternal Grandparents as M.F.R.G.'s permanent managing conservators in accordance with an affidavit of relinquishment Father purportedly executed a week before the termination hearing but which was neither on file nor presented at trial. At the beginning of the termination hearing, Father's attorney made the following announcement:

[Attorney]:    Your Honor, before we start, my client has requested that I announce ready if the [Department's] intention is to accept his relinquishment and terminate parental rights in favor of the [Grandparents] who have the child now . . . .

Otherwise, he has requested me to request a delay as to his proceeding in this case.

[The Court]:    What is the basis for the delay?

[Attorney]:    Well, I believe it's [Father's] hope and I confirmed that last week by telephone that the affidavit of relinquishment that he signed and returned but may not have been received by the county attorney yet would work to the advantage of [Grandparents] who the child [M.F.R.G.] has been placed with during the pendency of this case. . . .

---

[3] According to Grandmother, she was not aware that paperwork was missing until the termination hearing. Ortega testified that she previously informed Grandmother about the missing paperwork.

| [The Court]: | Well, I appreciate the information but that's not the way we make decisions about custody. So we are going to go forward with the hearing but there is no agreement as to where the children are going to be placed or the child is going to be placed at this time. I will decide that at the end of the hearing when I hear all the testimony. |
| --- | --- |
| [Attorney]: | Very well. |
| [The Court]: | Obviously, we are going to consider what he has to say but I can't make an agreement on that kind of situation. |

Under § 153.374 of the family code, a parent has the right to designate a competent person as the managing conservator of the child, and a trial court is required to honor that designation "unless the court finds that the appointment would not be in the best interest of the child." TEX. FAM. CODE ANN. § 153.374. To exercise that right, however, the parent must execute an affidavit of relinquishment in accordance with chapter 161 of the family code. *Id.* §§ 153.374(b), 161.103 (providing the mandatory requirements for a valid affidavit of relinquishment). The proponent of the affidavit bears the burden of proving by clear and convincing evidence that the affidavit meets the formal requirements of chapter 161. *Monroe v. Alternatives in Motion*, 234 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "An affidavit of relinquishment in proper form is prima facie evidence of its validity." *Id.*

Father argues that the trial court failed to conduct a meaningful best interest analysis, and as such, it was error for the court to designate the Department as the child's permanent managing conservator instead of Grandparents. *See* TEX. FAM. CODE ANN. § 153.374. Father puts the cart before the horse. As the proponent of the purported

5

affidavit, it was Father's burden to produce a properly executed affidavit.[4] *See Monroe*, 234 S.W.3d at 62. Having wholly failed to produce any affidavit, we cannot say that the trial court denied Father his right to designate the primary managing conservator absent a contrary best interest finding. *See* Tex. Fam. Code Ann. § 153.374. To the contrary, without a properly executed affidavit, Father failed to trigger the trial court's obligations under the statute. *See id.* Furthermore, Father has not appealed the trial court's decision to deny his request for a continuance. We overrule Father's first issue.

### III.  TERMINATION

By his second issue, Father challenges the legal and factual sufficiency of the evidence supporting the trial court's termination findings under § 161.001(b)(1)(G), (N), and (Q).

### A.  Standard of Review

Under Texas Family Code § 161.001, a trial court may terminate a parent's rights to a child if the court finds by clear and convincing evidence that termination is in the child's best interest and one or more statutory predicate grounds have been satisfied. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 543 (Tex. 2020) (per curiam). Because a parent has a constitutionally protected relationship with his or her children, involuntary parental termination must be strictly scrutinized. *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). Due process requires the petitioner to justify termination by clear and convincing evidence. Tex. Fam.

---

[4] We note the unusual circumstances of this case. Typically, the proponent of the affidavit is the designee, and the parent or another interested party is challenging the validity of the affidavit, alleging it was executed due to fraud, duress, or coercion. *See, e.g.*, *Monroe v. Alternatives in Motion*, 234 S.W.3d 56, 61 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

CODE ANN. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re N.G.*, 577 S.W.3d at 235; *In re N.T.*, 474 S.W.3d 465, 475 (Tex. App.—Dallas 2015, no pet.).

On appeal, we apply a standard of review that reflects the elevated burden at trial. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). Under both legal and factual sufficiency standards, we consider all the evidence, defer to the factfinder's credibility determinations, and determine whether the factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002); *In re N.T.*, 474 S.W.3d at 475. "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018).

In conducting a legal sufficiency review of an order terminating parental rights, the reviewing court cannot ignore undisputed evidence contrary to the finding but must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* We "consider all the evidence, not just that which favors the verdict," and we assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re N.T.*, 474 S.W.3d at 475. We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

When reviewing the factual sufficiency of the evidence supporting a termination finding, we ask whether, in light of the entire record, the evidence is such that a factfinder

could reasonably form a firm conviction about the truth of the allegations against the parent. *Id.*; *In re J.D.B.*, 435 S.W.3d 452, 463 (Tex. App.—Dallas 2014, no pet.). We must consider whether the disputed evidence is such that a reasonable factfinder could not have reconciled that disputed evidence in favor of its finding. *In re N.T.,* 474 S.W.3d at 475. If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## B.    Abandonment

Under subsection 161.001(b)(1)(G), a parent's rights can be terminated when the parent has "abandoned the child without identifying the child or furnishing means of identification, and the child's identity cannot be ascertained by the exercise of reasonable diligence." TEX. FAM. CODE ANN. § 161.001(b)(1)(G). Father argues that there is "no evidence" in the record to support this ground. We agree.[5]

A child is abandoned when it is deserted by its parent or parents. *Hendricks v. Curry*, 401 S.W.2d 796, 800 (Tex. 1966) (interpreting abandonment under a former statute).[6] Abandonment is the intentional relinquishment of a known right; it must be voluntary, absolute, and must amount to a total desertion. *Lashbrook v. Altum*, 391 S.W.2d 549, 552 (Tex. App.—Austin 1965, no writ) (interpreting the same statute). There is no evidence in the record that Father, who was incarcerated at the time of M.F.R.G.'s birth and remained so throughout the pendency of this suit, voluntarily deserted M.F.R.G. *See Curry*, 401 S.W.2d at 800; *Altum*, 391 S.W.2d at 552. Moreover, there is no evidence

---

[5] The Department elected not to address this ground for termination on appeal; instead, the Department's brief only discusses the sufficiency of the evidence to sustain termination under subsection N.

[6] We found no caselaw interpreting subsection G.

in the record that M.F.R.G.'s identity was unknown at any point in time. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(G). We sustain this sub-issue.

## C.    Ability to Care for the Child

We address the sufficiency of the evidence under subsections (N) and (Q) together because they turn on the same question: Did the Department prove by clear and convincing evidence that Grandparents are inadequate surrogates for Father during his incarceration.

### 1.    Applicable Law

Under subsection 161.001(b)(1)(N), a parent's rights can be terminated if the court finds by clear and convincing evidence that the parent has

> constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>
> > (i)    the department has made reasonable efforts to return the child to the parent;
> >
> > (ii)    the parent has not regularly visited or maintained significant contact with the child; and
> >
> > (iii)    the parent has demonstrated an inability to provide the child with a safe environment.

TEX. FAM. CODE ANN. § 161.001(b)(1)(N). The first element focuses on the Department's conduct; the second and third elements focus on the parent's conduct. *In re A.L.H.*, 468 S.W.3d 738, 744 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The evidence must be sufficient to support each element set out in subsection N, and the Department bears the burden of proof by clear and convincing evidence. *In re A.L.H.*, 468 S.W.3d at 744. Father only challenges the sufficiency of the evidence to support the third element. In terms of

providing a safe environment for the child, an "incarcerated parent may be able to work through surrogates, such as relatives, spouses, or friends, to fulfill that obligation." *In re D.S.A.*, 113 S.W.3d 567, 573 (Tex. App.—Amarillo 2003, no pet.). When a surrogate agrees to such an arrangement, "it is hard to deny that the parent has taken steps to provide or effectively provided a safe environment." *Id.*

Under subsection 161.001(b)(1)(Q), a parent's rights can be terminated when a parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition." TEX. FAM. CODE ANN. § 161.001(b)(1)(Q). Subsection Q applies prospectively in anticipation of a parent's inability to care for the child and not just in response to it. *In re A.V.*, 113 S.W.3d at 360. This provision is not an additional punishment for a parent's criminal conduct; instead, it is used to "ensure that the child will not be neglected" while the parent is incarcerated. *Id.* Proof that the parent is unable to care for the child is an additional requirement that is not met by showing incarceration alone. *In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006) (per curiam) ("Terminating parental rights under subsection Q requires that the parent be both incarcerated or confined and unable to care for the child for at least two years from the date the termination petition is filed.").

We employ a burden-shifting analysis to assess an incarcerated parent's ability to care for a child. *In re J.G.S.*, 574 S.W.3d 101, 118–19 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). The party seeking termination must first establish that the parent will remain in confinement for the requisite period. *In re B.D.A.*, 546 S.W.3d 346, 358 (Tex.

10

App.—Houston [1st Dist.] 2018, pet. denied). The burden then shifts to the parent to produce "some evidence" as to how he would provide or arrange to provide care for the child during his incarceration. *Id.* "Cases discussing the incarcerated parent's provision of support through other people contemplate that the support will come from the incarcerated parent's family or someone who has agreed to assume the incarcerated parent's obligation to care for the child." *In re H.R.M.*, 209 S.W.3d at 110. When the incarcerated parent meets that burden of production, the petitioner has the burden of persuasion to show by clear and convincing evidence that the parent's arrangement would not satisfy the parent's duty to the child. *In re Caballero*, 53 S.W.3d 391, 395 (Tex. App.—Amarillo 2001, pet. denied).

### 2. Analysis

In this case, the evidence was sufficient to establish that Father knowingly engaged in criminal conduct and would remain incarcerated two years from the filing of the petition. *See* TEX. FAM. CODE. ANN. § 161.001(b)(1)(Q); *In re B.D.A.*, 546 S.W.3d at 358. At the time of the termination hearing, Father had "about four or five years" remaining on his sentence for an assault conviction. Although there was evidence in the record that Father would soon be considered for parole, he was previously denied parole, and the uncertain outcome of such a proceeding made the prospect of his early release speculative. *See In re H.R.M*, 209 S.W.3d at 109 (explaining that because parole decisions are "inherently speculative" and rest "entirely within the parole board's discretion," the "[m]ere introduction of parole-related evidence . . . does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated

11

for at least two years"). Therefore, the burden shifted to Father to provide "some evidence" that someone had agreed to assume his obligation to care for M.F.R.G. *See id.* at 110. Father identified his parents as his surrogates, asking the trial court to "deny termination but grant [permanent managing conservatorship] to [his] parents," and Grandmother testified that she and her husband were willing to "raise [M.F.R.G.] with or without the ability to adopt her." *See id.*; *see also In re C.D.L.R.*, No. 13-19-00008-CV, 2019 WL 2608776, at *3, 10 (Tex. App.—Corpus Christi–Edinburg June 26, 2019, no pet.) (mem. op.) (finding evidence legally and factually insufficient to terminate under subsection Q where grandmother testified that she was willing to care for child "regardless" of ability to adopt); *In re D.D.P.*, No. 04-17-00444-CV, 2018 WL 1610935, at *4 (Tex. App.—San Antonio Apr. 4, 2018, no pet.) (mem. op.) (rejecting mother's sufficiency challenge to third element of subsection N where "kinship placement would not continue if [mother's] parental rights were not terminated, because the kinship placement wanted no involvement with [mother] or her family"); *In re A.R.*, No. 02-14-00237-CV, 2015 WL 222496, at *4 (Tex. App.—Fort Worth 2015, no pet.) (mem. op.) (rejecting father's sufficiency challenge under subsection Q because family placement testified that she wanted to be the child's "forever parent" instead of acting as father's surrogate); *In re D.Z.R.-M.*, No. 14-13-01084-CV, 2014 WL 1390289, at *9 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (mem. op.) (rejecting sufficiency challenge under subsection Q where family placement testified she was providing care "on her own behalf, rather than agreeing to assume the Father's obligation to care for the Child while the Father is incarcerated"). Therefore, the burden shifted to the Department to prove by clear and convincing

12

evidence that Grandparents could not meet Father's duty of care for M.F.R.G., including providing a safe environment. *See In re Caballero*, 53 S.W.3d at 395.

It is undisputed Grandparents can care for M.F.R.G and meet her needs. At the time of the termination hearing, M.F.R.G. had been placed with Grandparents for fourteen months. Grandmother testified that M.F.R.G. is "doing really well" in their care. She described M.F.R.G.'s development since she began living with them: "When we first got her[,] she was 18 months[,] and she was not walking. We got her to walk. We took her bottle away. She drinks from a cup." The Department's witness agreed. Ortega testified that "[M.F.R.G.] is doing well" in her placement with Grandparents, "[s]he's grown up," and "[h]er basic needs are being met."[7] *See id.* at 396; *see also In re A.H.*, No. 09-19-00167-CV, 2019 WL 4865196, at *5 (Tex. App.—Beaumont Oct. 3, 2019, no pet.) (mem. op.) (rejecting father's sufficiency challenge to the third element of subsection N where paternal grandmother's ability and competency to care for the child was disputed).

Nevertheless, the Department argues on appeal that the safety of Grandparents' home was "not established" because Grandparents' received an unfavorable home study. However, it was the Department's burden to prove by clear and convincing evidence that Grandparents could not provide a safe environment or satisfy Father's duty to M.F.R.G. *See In re A.L.H.*, 468 S.W.3d at 744; *In re Caballero*, 53 S.W.3d at 395. And as the

---

[7] Ortega's testimony at the termination hearing was consistent with her prior testimony. At three separate permanency hearings, the Department recommended that the trial court continue M.F.R.G.'s placement with Grandparents. At each hearing, Ortega testified that M.F.R.G was "doing well" and Grandparents were meeting all her needs. During the third permanency hearing, Ortega said M.F.R.G. was "thriving" in her placement with Grandparents in terms "of being with family and bonding." Accordingly, only four months before the termination hearing, the trial court found that Grandmother was "able to provide [M.F.R.G.] with a safe environment and continued placement of the child with [Grandmother] is in the child's best interest."

Department acknowledged during the termination hearing, the unfavorable finding was based on a curable procedural defect, not a negative finding about Grandparents' home environment. To the contrary, given the Department's unequivocal approval of Grandparents' care of M.F.R.G., the Department failed to meet its burden.

At the termination hearing, the Department explained that the unfavorable finding was based on missing paperwork. Although not entirely clear from the record, it appears Grandfather had some decades-old "drug related" charges, and he provided some, but not all, of the necessary paperwork concerning the final disposition of those charges. The Department cannot credibly claim on appeal that Grandfather's criminal history posed a genuine threat to M.F.R.G.'s safety, particularly when it repeatedly recommended placement continue with Grandparents. As temporary managing conservator, the Department was charged with M.F.R.G.'s care and protection. *See* TEX. FAM. CODE ANN. § 153.371(2). Despite knowing of Grandfather's prior charges, the Department recommended that M.F.R.G. continue her placement with Grandparents on three separate occasions prior to the termination hearing because the Department considered it to be in M.F.R.G.'s best interest. Perhaps the Department was willing to look beyond Grandfather's criminal history because the charges were more than twenty or thirty years old.[8] Whatever the reason, the Department never asked Grandfather or Grandmother to submit to a drug test in the fourteen months M.F.R.G. resided with them. Most importantly, there is no evidence in the record that Grandfather engaged in any criminal conduct in

---

[8] Grandmother testified that Grandfather's charges were "over 20, maybe 30 something years [old]," and the Department did not dispute her testimony. Grandmother further testified that Grandfather "completed his probation[,] and he did his jail time. He completed all of that."

14

the intervening decades since his "drug related" charges. In fact, there is no evidence in the record that Grandparents exhibited any behavior inconsistent with M.F.R.G.'s best interest. In other words, the Department failed to show that Grandfather's distant past posed a present threat to M.F.R.G.'s wellbeing.

Indeed, contrary to its position on appeal, the Department acknowledged that its decision to withdraw its support for Grandparents was based entirely on its internal policy regarding Grandparents' eligibility to adopt M.F.R.G. without a favorable home study, not Grandparents' demonstrated ability to care for M.F.R.G.

| [Attorney]: | This is really not an issue of the [Grandparents] are bad and the [prospective adoptive parents] are good, right, this is more about the Department's policy because someone who has a negative or unfavorable home study is not eligible to adopt a child who is in the conservatorship of [the Department], correct? |
|---|---|
| [Ortega]: | Yes. |

Of course, Grandparents' ability to adopt M.F.R.G. is irrelevant if Father's parental rights are not terminated. *See* TEX. FAM. CODE ANN. § 162.001(b)(1) (requiring termination of parental rights before a child is eligible for adoption). Regardless, the Department also acknowledged Grandparents can "rehabilitate" their home study if Grandfather provides the missing paperwork. Stated differently, the Department does not consider Grandfather's criminal history disqualifying in and of itself. Finally, Ortega explained that although the Department's policy prohibited it from recommending a continued placement with Grandparents, "we are in agreement to support whatever the judge orders ensuring that her needs are being met." According to Ortega's undisputed testimony, Grandparents are capable of meeting M.F.R.G.'s needs. Thus, even though the Department ultimately

15

opposed Father's proposed placement, the Department's own evidence effectively established that M.F.R.G. would face no risk of neglect under the Grandparents' supervision. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (providing that a legal sufficiency challenge should be sustained when "the evidence establishes conclusively the opposite of the vital fact"); *see also In re I.G.*, No. 13-18-00114-CV, 2018 WL 3062581, at *4 (Tex. App.—Corpus Christi–Edinburg June 21, 2018, no pet.) (finding evidence legally insufficient to terminate under subsection Q where Department's own witness testified that grandparents would provide children "with a good home").

Even viewing the record in the light most favorable to the trial court's judgment, no reasonable factfinder could form a firm belief or conviction that Father's proposed arrangement would not satisfy his obligation to care for M.F.R.G., including providing a safe environment. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N), (Q); *In re J.F.C.*, 96 S.W.3d at 266. Therefore, we conclude that the evidence is legally insufficient to support the trial court's findings otherwise. *See In re J.F.C.*, 96 S.W.3d at 266; *City of Keller*, 168 S.W.3d at 810. We sustain Father's second issue.[9]

## IV.    APPOINTMENT OF DEPARTMENT AS MANAGING CONSERVATOR

Although the Department alleged in its petition that appointing Father as M.F.R.G.'s permanent managing conservator would not be in her best interest because doing so would significantly impair the child's physical health or emotional development, the trial court failed to make the necessary findings to support the requested conservatorship. *See* Tex. Fam. Code Ann. § 153.131. Therefore, "the only available

---

[9] Because the evidence was not sufficient to support the trial court's termination findings, we need not reach Father's sufficiency challenge to the trial court's best interest finding. *See* Tex. R. App. P. 47.1

16

statutory mechanism for the Department's appointment was as a consequence of the termination pursuant to section 161.207." *In re D.N.C.*, 252 S.W.3d 317, 319 (Tex. 2008) (per curiam); *see* TEX. FAM. CODE ANN. § 161.207(a) ("If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the [Department], or a licensed child-placing agency as managing conservator of the child."). Under these circumstances, Father's challenge to the conservatorship appointment is subsumed in his appeal of the termination order, and having reversed the termination order, we must also reverse the Department's appointment as managing conservator. *See id.*

## V. CONCLUSION

Ordinarily, when we find legally insufficient evidence to support a judgment, we render judgment to the contrary. *See* TEX. R. APP. P. 43.3. However, in cases involving involuntary termination of parental rights, if the trial court does not order termination of the parent-child relationship, § 161.205 of the family code requires that the trial court either (1) deny the petition for termination or (2) render any order in the best interest of the child. TEX. FAM. CODE ANN. § 161.205. "Appellate courts are not in a position to determine whether simply to deny the petition for termination or render some other order in the best interest of the child." *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 874–75 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (noting that "circumstances surrounding the parent-child relationship may have changed since the trial court's original judgment, which would require a fact-finder to assess the new situation"). We are therefore unable to render a judgment that disposes of all remaining issues in the case and must remand

17

the case in part for further proceedings under § 161.205. *See* TEX. R. APP. P. 43.3(a).

Accordingly, we reverse and render judgment in part that Father's parental rights are not terminated, we reverse the portion of the judgment appointing the Department as permanent managing conservator, and we remand the case to the trial court for the limited purpose of rendering an order, consistent with § 161.205, disposing of the portion of the petition relating to Father. We affirm the portion of the judgment terminating Mother's parental rights.

GINA M. BENAVIDES
Justice

Delivered and filed on the
27th day of May, 2021.